UNITED STATES of America ex rel.
Miguel A. ESPINOZA,
Petitioner-Appellee,

v.

J.W. FAIRMAN, Warden,
Respondent-Appellant.

No. 85–1486.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1986.
Decided Feb. 25, 1987.

Sally L. Dilgart, Asst. Atty. Gen., Chicago, for respondent-appellant.

Tammi Franke, William H. Wise & Assoc., Chicago, for petitioner-appellee.

Before COFFEY, FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

The petitioner, Miguel Espinoza, was arrested on a weapons charge. At his arraignment on that charge, he was represented by counsel. Subsequently, while Espinoza was still in custody, the police interrogated him concerning a murder. Espinoza, who was not represented by counsel at that interrogation, confessed to the murder. At his trial on the murder charge, Espinoza moved to have his confession suppressed. The state trial court denied his motion and subsequently convicted him of murder.

After exhausting his state remedies, Espinoza petitioned for a writ of habeas corpus. The district court granted the petition, holding that Espinoza had both a Fifth Amendment and a Sixth Amendment right to have counsel at the interrogation, and that he had not knowingly and voluntarily waived those rights. Because the state had not yet begun to prosecute Espinoza on the murder charge at the time he confessed, we conclude that Espinoza had no Sixth Amendment right to counsel at the police interrogation concerning that crime. However, because Espinoza invoked his Fifth Amendment right to counsel at his arraignment on the weapons charge, we conclude that the state was barred from initiating an interrogation of Espinoza without counsel concerning any crime for as long as he remained in continuous police custody. We therefore affirm the decision of the district court.

## I.

On August 29, 1980, Chicago police officers arrested the petitioner, Miguel Espinoza, on a charge of unauthorized use of a weapon. The police placed Espinoza in the Cook County Jail to await trial. At some point between August 29 and September 3, a public defender, who was appointed to represent Espinoza, appeared on his behalf at his arraignment on the weapons charge.

While Espinoza remained in custody, the police conducted tests on the gun taken from him at the time of his arrest. Based on these tests, the police concluded that Espinoza's gun had been used to kill Frank

Foy, a twenty-five year old Chicago teacher who had been shot to death on August 24, 1980.

On September 3, 1980, Assistant State's Attorney Brian Collins interviewed Espinoza regarding the murder. Although Collins was aware that the police had taken Espinoza into custody on the weapons charge, he did not ask Espinoza whether he had a lawyer. Collins did, however, give Espinoza his *Miranda* warnings, which stated that if Espinoza wanted a lawyer present he could have one. Collins then asked Espinoza if he wanted to waive his rights. Espinoza agreed to do so—first orally and then, during the interrogation, by signing a waiver form. Although the record is somewhat unclear, it appears that, at the time Collins first asked Espinoza to waive his rights, Espinoza did not know that he was going to be interviewed about the Foy murder.

Collins conducted the interrogation in English. However, he did not ask Espinoza, a native Mexican, if he understood English or if he wanted to have an interpreter present. Although Espinoza answered in English, his answers consisted primarily of "yes" or "no" responses. After only fifteen to twenty minutes of questioning, Espinoza confessed that he and two of his friends had murdered Frank Foy.

The next morning, based on his confession, the state filed a complaint against Espinoza, charging him with murder. The state later dropped the weapons charge.

Espinoza did not stand trial for a year and a half. The trial judge initially ordered Espinoza held in jail pending a psychiatric evaluation of his competence to stand trial. While in jail, Espinoza attempted to commit suicide. He was subsequently placed in the Chester Mental Health Center. Five different mental health professionals examined Espinoza during this year and a half period. Four of the five believed Espinoza mentally unfit to stand trial.

On March 3, 1982, the court held a hearing to determine whether Espinoza was capable of standing trial. One psychiatrist testified that, based on an electroencephalogram which showed no abnormalities, he believed that Espinoza was pretending to be mentally ill. Another psychiatrist testified that Espinoza was unfit for trial because he was suffering from a depressive neurosis that prevented him from cooperating with his attorney. Espinoza mumbled unintelligibly throughout this hearing. At the conclusion of the hearing, the state trial judge found Espinoza fit for trial and able to cooperate with his attorney.

Espinoza then moved to suppress his confession. The motion asserted that Espinoza had a Fifth Amendment and a Sixth Amendment right to counsel at the interrogation and that he had not waived these rights knowingly or voluntarily. Specifically, Espinoza claimed that he had not comprehended the *Miranda* warnings; that his psychological disabilities had prevented him from being able to voluntarily relinquish his rights; and that the police had coerced him to confess by placing him in a chair, putting wires on his head, and simulating an electrocution. The trial judge denied the motion, finding that Espinoza had understood what occurred at the interrogation and had confessed voluntarily.

The ensuing trial lasted less than one hour. Espinoza's confession was the state's principal evidence. The confession was buttressed by the tests on the gun that the police found in Espinoza's possession. The state introduced no additional testimony. At the conclusion of the trial, the court found Espinoza guilty.

The trial judge denied the state's request to sentence Espinoza to death because Espinoza's possible psychological problems, and his use of alcohol and narcotics, were mitigating circumstances. Instead, the court imposed the maximum sentence of forty years.

After exhausting his state remedies, Espinoza filed a petition for a writ of habeas corpus, under 28 U.S.C. § 2254, in federal district court. The court granted Espinoza's petition, holding that he had a Fifth Amendment and a Sixth Amendment right to be assisted by counsel at the police interrogation. The court concluded that Espinoza's very limited education, his extensive

alcohol and drug use, his preference for speaking Spanish, the short period of time between his being informed that he was a suspect and his confession, and his mental condition at the time of the interrogation, indicated that he had not knowingly and voluntarily waived his right to counsel before he was interrogated by the assistant state's attorney. The court therefore concluded that Espinoza's confession should have been suppressed. We affirm the decision of the district court but on substantially different grounds.

## II.

The Fifth Amendment and the Sixth Amendment each provide a separate right to counsel in a criminal case. The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. Although the amendment itself does not speak of the right to counsel, the Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that it provides "an individual held for interrogation ... the right to consult with a lawyer and to have the lawyer with him during interrogation," *id.* at 471, 86 S.Ct. at 1626. In addition, the Sixth Amendment guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence," U.S. Const. Amend. VI, expressly provides a right to counsel.

In the ordinary criminal prosecution, the defendant invokes his or her Fifth Amendment and Sixth Amendment rights to counsel sequentially. The defendant first invokes the Fifth Amendment right to counsel by requesting counsel, either at the time he or she is taken into custody or at a later interrogation conducted while the individual is still in custody. Subsequently, once the state has committed itself to prosecute, the defendant invokes his or her Sixth Amendment right to be represented by counsel at a procedure, such as an arraignment, that constitutes a "critical stage of the prosecution," *United States v.* *Wade*, 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967).

In this case, the defendant did not invoke his rights to counsel in the usual sequence. From the time Espinoza was taken into custody on the weapons charge, until his arraignment on that charge six days later, he did not invoke his Fifth Amendment right to counsel. Espinoza's first and only invocation of his right to counsel occurred at his arraignment on the weapons charge, where he clearly invoked his Sixth Amendment right to counsel in that prosecution by accepting representation. *See Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). After invoking that right, and while still in police custody, Espinoza became a suspect in a murder case. At that point, the police initiated an interrogation of Espinoza concerning the murder.

This case requires us to resolve four questions. We must first determine whether Espinoza had either a Fifth Amendment or a Sixth Amendment right to counsel at the murder interrogation. If he did, we must next establish whether his actions at his arraignment on the weapons charge constituted an invocation of either of those rights. If Espinoza invoked either right, we must resolve whether that invocation remained in effect at the subsequent interrogation. If it did, then we must determine whether Espinoza waived his right to counsel at the interrogation. If we find for Espinoza on each question, then we must conclude that the state trial court should have suppressed Espinoza's confession, and we must affirm the district court's decision to grant his petition.

## III.

▮ The district court concluded that Espinoza had a Sixth Amendment right to counsel at the interrogation regarding the murder charge. We do not agree. The Sixth Amendment right to counsel attaches only when the state begins to prosecute an individual. Because the state had not begun to prosecute Espinoza for the Foy murder at the time he confessed, we conclude that he had no Sixth Amendment

right to counsel in this case. We need not, therefore, reach the questions of whether Espinoza's actions at his arraignment on the weapons charge constituted an invocation of his Sixth Amendment right in the murder case, the duration of any such invocation, or whether he waived his Sixth Amendment right at the interrogation.

We recently considered whether an individual in police custody who has a Sixth Amendment right to counsel as the accused in one criminal prosecution has a Sixth Amendment right to counsel in a second case in which he or she is a suspect. In *United States ex rel. Hall v. Lane*, 804 F.2d 79 (7th Cir.1986), the petitioner, Anthony Hall, was arrested and arraigned on charges of attempted robbery and unlawful restraint. While Hall was in jail awaiting trial on these charges, he was required to participate, without counsel, in a line-up as a suspect in an unrelated armed robbery and attempted rape case. Hall was convicted on the latter charges at a trial in which the eyewitness identification made at the line-up was a key piece of evidence. He later petitioned for a writ of habeas corpus, claiming that the line-up evidence was inadmissible because he had been denied his Sixth Amendment right to counsel.

We rejected Hall's claim that he had a Sixth Amendment right to counsel. We explained that the Sixth Amendment "right to counsel attaches only when a defendant proves that, *at the time of the procedure in question*, the government had crossed the constitutionally significant divide from fact-finder to adversary." *Id.* at 82 (emphasis added). We further explained that "the fact that [the petitioner] had already been indicted, and was in jail awaiting trial for another charge," *id.* at 83, did not itself demonstrate that the state had begun the prosecution in the second case. We then considered the specific facts of the case. We found that "[a]t the time of the line-up, Anthony Hall was still a genuine suspect.

The state was seeking to determine whether to prosecute him; it had not yet begun to do so." *Id.* As a result, we concluded that, at the time of the line-up, Hall had no Sixth Amendment right to counsel and that the trial court did not err in admitting evidence from the line-up at his trial. *Id.*

Our decision in *Hall* is controlling. At the time of the police investigation, Espinoza was still only a suspect in the investigation of the Foy murder. He therefore had no Sixth Amendment right to invoke. *See also Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 490 n. 16, 88 L.Ed.2d 481 (1985) (dictum) (Even if the state has begun to prosecute an individual on one charge, subsequent "incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at the trial of those offenses.").

The district court believed that Espinoza's Sixth Amendment right had vested in the murder case because that case was "related to" the weapons prosecution. The court also held that, even if the cases were unrelated, the Sixth Amendment right applied to the murder charge because the murder occurred before Espinoza was arraigned on the weapons charge. We reject both of these conclusions.

We need not speculate as to when, if ever, two crimes may be so closely "related" that once the state has begun the prosecution for one of them, it must be deemed to have begun the prosecution in the other. It is enough to say that in this case the crimes are so unrelated as to render any such theory inapplicable.[1] *Cf. United States v. Chu*, 779 F.2d 356 (7th Cir.1985) (An indictment for drug offenses did not trigger the accused's Sixth Amendment right to counsel in a related tax evasion investigation.).

We also find it irrelevant that the police were interrogating Espinoza for a crime he allegedly committed before he was arraign-

---

1. The only common thread linking the weapons and murder cases is the weapon involved. The two offenses involved different victims on different dates. There is no claim that they were part of any pattern or plan. Although Espinoza's arrest on the weapons charge did provide the police with evidence—which they might not otherwise have obtained—that led to his arrest for the Foy murder, this fortuity does not change the fact that the weapons offense and the murder were, in every constitutionally significant aspect, separate crimes.

ed for the weapons offense. The district court relied on *United States v. Moschiano,* 695 F.2d 236 (7th Cir.1982), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983), for the proposition that, under the Sixth Amendment, all "post-indictment statements constituting admissions of past wrongdoing" are inadmissible unless the accused is given the right to counsel. *United States ex rel. Espinoza v. Fairman,* No. 84 C 7603 at 11 (N.D.Ill. Mar. 12, 1985) (memorandum opinion) (*quoting Moschiano,* 695 F.2d at 241–42). However, in *Moschiano* we were referring only to post-indictment statements concerning the *specific crime* for which the accused had been indicted. We cannot see why a suspect, who would otherwise have no Sixth Amendment right to counsel, is entitled to that right simply because he has been charged with committing another crime.[2] We found no such entitlement in *Hall, supra,* where the petitioner was also under investigation for a crime that he committed before he was arraigned on other charges.

### IV.

◼ Although Espinoza had no Sixth Amendment right to counsel in the murder case at the time of the police interrogation, it is clear that, as a suspect in police custody, he did have a Fifth Amendment right to be assisted by an attorney at the interrogation. *Miranda,* 384 U.S. at 469–74, 86 S.Ct. at 1625–28. However, Espinoza did not invoke his Fifth Amendment right at the interrogation. The only time at which he invoked his constitutional right to counsel was at his arraignment on the weapons charge, which occurred prior to the murder interrogation. We must therefore determine whether Espinoza's invocation of his right to counsel at his arraignment constituted an invocation of his Fifth Amendment right. If it did, we must next decide whether Espinoza's Fifth Amendment invo-

cation remained in effect at the subsequent police interrogation on the murder charge. If so, we must resolve whether Espinoza waived his Fifth Amendment right to counsel at the interrogation.

We conclude that Espinoza invoked his Fifth Amendment right to counsel; that this invocation remained in effect because the custodial interrogation occurred while he remained in continuous police custody; and that because the state initiated the interrogation, Espinoza was incapable of waiving his right to counsel. We therefore conclude that the state violated Espinoza's Fifth Amendment right to counsel and that, as a result, his confession was inadmissible.

### A.

We must first consider whether Espinoza invoked his Fifth Amendment right to counsel. The state argues that he did not. Rather, the state contends, Espinoza's invocation of the right to counsel at his arraignment on the weapons charge was limited to his Sixth Amendment right as the accused in that prosecution. We are unable to accept so narrow an interpretation of Espinoza's invocation of his constitutional rights.

In *Michigan v. Jackson,* —— U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Supreme Court set out the approach to be employed in assessing the scope of an individual's invocation of his or her constitutional right to counsel. The defendants in *Jackson* were arrested for murder. At their arraignments, they asked the court to appoint counsel. *Id.,* 106 S.Ct. at 1406. The state subsequently interrogated the defendants without their attorneys. The defendants, who were later convicted, appealed, claiming that the state had violated their Sixth Amendment rights by failing to honor their request for counsel.

Much like the state in this case, the state in *Jackson* argued that it had not violated

---

**2.** We also reject Espinoza's claim that, by interrogating him outside the presence of the attorney who represented him at his arraignment, the state violated his Sixth Amendment right to counsel by interfering with his professional relationship with that attorney. As we stated in

*Hall,* " 'the Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship....' " *Hall,* 804 F.2d at 83, n. 5 (*quoting Moran v. Burbine,* 475 U.S. 412, ——, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986)).

the defendants' rights to counsel because the defendants had made only limited invocations of their rights. Specifically, the state argued that the defendants had only requested to have counsel present at their arraignments and that the Court should not construe these requests as invocations of their rights to counsel at subsequent custodial interrogations. *Id.* at 1409. The Supreme Court firmly rejected the state's argument, holding that it was obligated "to give a broad, rather than a narrow, interpretation to a defendant's request for counsel," *id.,* and that it would therefore presume that the defendants had invoked the full extent of their Sixth Amendment rights, *id.*

■ Although the *Jackson* Court was asked only to resolve whether the defendants had invoked their Sixth Amendment rights to counsel, *see id.* at 1408 n. 4, the obligation "to give a broad, rather than a narrow, interpretation," *id.* at 1409, to an invocation of the right to counsel is not limited to the Sixth Amendment context. Rather, the Court's interpretation was simply an application of its "standard for assessing waivers of constitutional rights." *Id.* The Court has recently reaffirmed that the same interpretative approach is to be used in assessing invocations of the Fifth Amendment right to counsel. *See Connecticut v. Barrett,* — U.S. ——, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987) (*quoting Jackson* ).³ Under this approach, a court must presume that an individual has invoked the full extent of his or her constitutional right to counsel. In order to rebut this presumption, "the state ... has the

burden of establishing a valid waiver." *Jackson,* 106 S.Ct. at 1409.

■ Applying the *Jackson* approach, we must accept, absent evidence to the contrary, that individuals who invoke their right to counsel at their arraignment are invoking both their Sixth Amendment and their Fifth Amendment rights. The *Jackson* Court specifically observed that an individual who has been arraigned has both a Sixth Amendment and a Fifth Amendment right to counsel at a "post-arraignment custodial interrogation." *Id.* at 1407. The Court also observed that "an accused [who] requests an attorney [at arraignment] ... does not know which constitutional right he is invoking." *Id.* at 1409–10 n. 7 (*quoting Michigan v. Jackson,* 421 Mich. 39, 63–64, 365 N.W.2d 56, 67 (1984)). Because an individual who does not understand his or her rights cannot validly waive them, *see Moran v. Burbine,* 106 S.Ct. at 1141, we are required to presume that an individual who requests counsel at his or her arraignment is asserting both a Sixth Amendment and a Fifth Amendment right even if the individual does not "articulate exactly why or for what purposes he is seeking counsel," *Jackson,* 106 S.Ct. at 1409 n. 7 (*quoting Michigan v. Jackson,* 421 Mich. at 63–64, 365 N.W.2d at 67).

In this case, as in *Jackson,* the state has presented no evidence indicating that Espinoza intended to limit his invocation of the right to counsel. Applying the principles set forth in *Jackson,* we must conclude that Espinoza's unqualified acceptance of counsel at his arraignment was an invocation of his Fifth Amendment right,⁴ rather than a waiver of it.⁵

3. Even though the text of the Fifth Amendment does not provide a right to counsel, *Barrett,* 107 S.Ct. at 831–32, the Supreme Court has consistently recognized the essential role that an attorney plays in ensuring that the state does not coerce individuals into waiving the right not to incriminate themselves. *See id.; Miranda,* 486 U.S. at 469–70, 86 S.Ct. at 1625–26. Because of the importance of counsel in protecting the textual right, waivers of the right to counsel are to be interpreted in the same manner as waivers of the textual right.

4. In *Jackson,* the defendant specifically requested counsel. *Id.* at 1406. Here, in contrast, the petitioner accepted counsel at his arraignment.

This distinction, however, is not relevant. The *Jackson* Court took pains to note that, in construing the scope of an individual's request for counsel, a defendant need not specifically request counsel. 106 S.Ct. at 1409 n. 6 (*citing Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977)).

5. We are aware of only three cases that have ever considered whether individuals who invoke the right to counsel at their arraignments are invoking both their Sixth and Fifth Amendment rights. *See Collins v. Francis,* 728 F.2d 1322 (11th Cir.) (per curiam), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984), *reh'g denied,* 469 U.S. 1143, 105 S.Ct. 826, 83 L.Ed.2d

The Supreme Court's decision in *Miranda* also requires us to find that Espinoza invoked his Fifth Amendment right to counsel. In *Miranda,* the Court held that if a suspect "indicates *in any manner at any stage of the process* that he wishes to consult with any attorney before speaking," *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612–13 (emphasis added), he has invoked his Fifth Amendment right to counsel. The invocation need not be "clear and unequivocal." *United States ex rel. Riley v. Franzen,* 653 F.2d 1153, 1159 (7th Cir.) (per curiam), *cert. denied,* 454 U.S. 1067, 102 S.Ct. 617, 70 L.Ed.2d 602 (1981). Rather, a court must find that an individual has invoked the right to counsel if his or her words or actions "reasonably may be so construed." *Id.; see, e.g., Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (per curiam) (defendant's statement, immediately after a police officer advised him of his right to counsel, that "Uh, yeah, I'd like to do that" held to invoke the right to counsel); *United States v. Porter,* 764 F.2d 1, 6–7 (1st Cir.), *reh'g denied,* 776 F.2d 370 (1985) (defendant's unsuccessful effort to contact his lawyer by telephone held to invoke the right to counsel); *United States v. Cherry,* 733 F.2d 1124 (5th Cir.1984) (defendant's statement that "[m]aybe I should speak to an attorney" held to invoke the right to counsel); *McCree v. Housewright,* 689 F.2d 797, 801 (8th Cir.1982), *cert. denied,* 460 U.S. 1088, 103 S.Ct. 1782, 76 L.Ed.2d 352 (1983) (defendant's statement that his brother "told me he th[inks] I need[ ] a lawyer" held to invoke the right to counsel). In this case, Espinoza's actions at his arraignment indicated that he wanted an attorney to act as his intermediary with the state. Under *Miranda* we are compelled to give effect to his intention.

### B.

Having concluded that Espinoza invoked his Fifth Amendment right to counsel at his arraignment on the weapons charge, we must next determine whether that invocation remained in effect at the subsequent questioning concerning the Foy murder. We conclude that it did.

### 1. The duration of the invocation

■ In the ordinary case, once the state has begun to prosecute an individual, attention is focused on the Sixth Amendment right to counsel. This is because the Sixth Amendment applies to aspects of a criminal prosecution not covered by the Fifth Amendment, such as a line-up, *see United States v. Wade,* 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967). However, at the time the state initiates the prosecution, the Fifth Amendment right does not vanish. Rather, it continues to provide a right to counsel at any interrogation that occurs during the duration of the time that the individual remains in police custody. *See Jackson,* 106 S.Ct. at 1407 (Individuals have both a Sixth Amendment and a Fifth Amendment right to counsel at "post-arraignment custodial interrogations.").

There are strong parallels between the duration of an individual's Fifth Amendment and Sixth Amendment right to counsel. The Sixth Amendment right vests

818 (1985); *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.), *reh'g denied sub. nom. Jordan v. Thigpen,* 688 F.2d 395 (5th Cir.1982); *Blasingame v. Estelle,* 604 F.2d 893 (5th Cir.1979). In each case, the court held that the petitioner had invoked only his Sixth Amendment right.

This case is factually distinguishable from *Collins, Jordan,* and *Blasingame.* In each of those cases, the court relied on evidence that, in its view, indicated that at the time of his invocation the petitioner was seeking to be assisted in preparing his trial defense (a Sixth Amendment right) and was not seeking to be shielded from state-coerced self-incrimination (a Fifth Amendment right). This evidence included the fact that each petitioner had confessed to the crime prior to his invocation of the right to counsel at his arraignment on that crime. In this case, in contrast, there is absolutely no evidence that Espinoza intended to limit his invocation.

We also decline to follow *Collins, Jordan,* and *Blasingame* because the Supreme Court's decision in *Jackson* suggests that they may no longer be good law. *Jackson* held that once an accused has invoked his or her Sixth Amendment right to counsel concerning a crime, the police cannot initiate an interview of the accused concerning that crime. *Jackson,* 106 S.Ct. at 1411. In each of these cases, however, after the petitioner invoked his Sixth Amendment right to counsel, the police initiated an interview about that crime.

when an individual "become[s] the accused." *Escobedo v. Illinois,* 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964). From that point on the accused is entitled to have an attorney present at all "critical stages of the prosecution." *United States v. Wade,* 388 U.S. at 237, 87 S.Ct. at 1937. This right continues for as long as the individual remains "the accused." That is, until the individual is either convicted or freed by reason of acquittal or dismissal of the charges.

In a similar manner, the Fifth Amendment right to counsel vests "when an individual is taken into custody." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630; *United States v. Zazzara,* 626 F.2d 135, 137 (9th Cir.1980). It is at this moment that the potential for "governmental coercion" becomes significant. *See Colorado v. Connelly,* — U.S. —, 107 S.Ct. 515, 519–24, 93 L.Ed.2d 473 (1986). From that point on, the suspect has "the right to have counsel present at *any* custodial interrogation." *Edwards v. Arizona,* 451 U.S. 477, 485–86, 101 S.Ct. 1880, 1885–86, 68 L.Ed.2d 378 (1981) (emphasis added). Just as the Sixth Amendment right continues for as long as the individual is "the accused," the Fifth Amendment right continues for as long as the individual is "in custody." The right ends only when the heightened potential for state-coerced self-incrimination ends— upon the release of the individual from police custody. *See United States v. Geittmann,* 733 F.2d 1419, 1429 (10th Cir.1984) (suspect's Fifth Amendment right to counsel ended when he was released on bond); *United States v. Skinner,* 667 F.2d 1306, 1309 (9th Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983) (suspect's invocation of his Fifth Amendment right to counsel did not bar police-initiated custodial interrogation where sus-

pect released and arrested the next day because he "was not in continuous custody").[6]

## 2. The scope of the invocation

Unlike the Sixth Amendment right to counsel, which is limited to the specific crimes for which the state has begun the prosecution, *supra,* the Fifth Amendment right to counsel extends to any crime about which an individual is questioned while in continuous custody. The difference between the scope of the two rights reflects their differing purposes. The "core purpose" of the Sixth Amendment right to counsel is to insure a fair trial. *United States v. Gouveia,* 467 U.S. 180, 188–89, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984). In order to insure a fair trial, an accused requires counsel only when the government is investigating him or her concerning the specific crimes for which he or she is being prosecuted. In contrast, "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Connelly v. Colorado,* 107 S.Ct. at 523. The heightened possibility of state "overreaching," *id.,* exists any time the police or prosecutors question suspects in police custody. Therefore, the Fifth Amendment right to counsel must extend to custodial interrogation concerning any crime.

■ Because the Fifth Amendment right extends to any interrogation conducted in police custody, if an individual invokes the right to counsel during a proceeding that concerns one crime, the invocation continues to apply if he or she is later interrogated about a second crime.[7] If it were otherwise, the police would be obligated to administer new *Miranda* warnings each time they questioned a suspect in continuous custody about a different crime. The

---

6. Because Espinoza was never released from the physical custody of the police, we need not decide the issue of how long the accused must be released from custody to find a break in continuous custody.

7. This court's opinion in *White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982) (*White II*) supports this conclusion. Although the Supreme Court vacated our decision because we applied *Edwards* retroactively, *see Fairman v. White,* 465 U.S. 1075, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984),

there is no reason to conclude that the Court rejected our underlying reasoning. Therefore, *White II's* analysis remains persuasive. In *White,* the defendant was arrested for an offense unrelated to the murder for which he was eventually convicted. *White v. Finkbeiner,* 611 F.2d 186 (7th Cir.1979) (*White I*). He invoked his right to counsel when given his *Miranda* warnings. The police officer who gave defendant his warnings never told any other officer of this invocation. *Id.* at 189. Subsequently, after

Supreme Court has made clear that the police are not constrained to do so. *See Colorado v. Spring*, — U.S. —, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (no Fifth Amendment violation where a suspect was arrested on a weapons charge, waived his right to counsel, answered questions regarding that offense, and later in the interrogation was questioned about a murder).

### 3. Espinoza's invocation

By accepting counsel at his arraignment on the weapons charge, Espinoza invoked his Fifth Amendment right to counsel. This invocation entitled Espinoza to be assisted by counsel at any interrogation, concerning any crime, that the police or prosecutors conducted while he remained in continuous physical custody. The interview conducted by the assistant state's attorney regarding the Foy murder occurred while Espinoza remained in continuous physical custody. It clearly constituted an interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). Espinoza, therefore, had the right to be assisted by counsel at that interrogation.

### C.

Although Espinoza invoked his Fifth Amendment right to counsel, and was therefore entitled to be represented by counsel at the police interrogation, the possibility remains that he may have waived this right. We conclude, however, that because the state initiated the interrogation, Espinoza was incapable of waiving his previously invoked right to counsel.

In *Miranda*, the Supreme Court held that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628. However, *Miranda* left open the possibility that the police could request individuals who had invoked their right to counsel to waive this right. *Cf. Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (*Miranda* permits the police to request individuals who have invoked their

Fifth Amendment right to *silence* to waive that right). The Court resolved this question in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), holding that an accused who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85, 101 S.Ct. at 1885.

The *Edwards* Court further considered the situation in which the state impermissibly initiates an interrogation after an individual has invoked the Fifth Amendment right to counsel. The Court held that, where the state acts in this matter, it may not establish that the suspect waived the right to counsel merely by showing only that the suspect "responded to further police-initiated custodial interrogation even if he ha[d] been advised of his rights." *Id.* at 484, 101 S.Ct. at 1885. Rather, when the state impermissibly initiates an interrogation, "any waiver of the defendant's right to counsel [at] that police-initiated interrogation is invalid." *Michigan v. Jackson*, 106 S.Ct. at 1411.

The state suggests that even if Espinoza did invoke his Fifth Amendment right to counsel, the rules laid down in *Edwards* do not apply in this case because Espinoza invoked his Fifth Amendment right at his arraignment rather than, as in *Edwards*, after the police had begun the interrogation. We do not see how this changes the analysis. Once an individual is taken into custody, he or she may request to have an attorney present at any interrogation. A suspect may make this request "at any stage of the process," *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612–13. The instant a suspect does so, the prophylactic rules set down in *Edwards* come immediately into operation. They apply for as long as the underlying right applies.

 Because Espinoza invoked his Fifth Amendment right to counsel at his arraign-

---

another *Miranda* warning, the defendant was questioned about the unrelated murder by a different officer, and confessed. *Id.* We found

that the defendant's earlier invocation continued to apply at the time of the later interrogation. *White II*, 687 F.2d at 887–88.

ment, the state's attorney was barred, under *Edwards*,[8] from initiating any interrogation while Espinoza remained in continuous custody. The state concedes that it initiated the interrogation of Espinoza regarding the Foy murder. Therefore, Espinoza was constitutionally incapable of waiving his right to counsel. By interrogating Espinoza about the murder in the absence of his lawyer, the police violated Espinoza's Fifth Amendment right to counsel.

## V.

The State of Illinois violated Espinoza's Fifth Amendment right to counsel by interrogating him without his lawyer. Therefore, the trial court should have granted Espinoza's motion to suppress the confession that he gave at his interrogation. Because Espinoza's confession was admitted into evidence at his trial for the murder of Frank Foy, the district court correctly granted Espinoza's writ of habeas corpus.

The order of the district court is AFFIRMED.

8. *Edwards* applies to all cases in which defendants were not finally convicted before May 18, 1981, the date on which that case was decided. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). Espinoza was not convicted until 1983. *Edwards* therefore applies.