## State of Vermont v. Rick A. Preston

[555 A.2d 360]

No. 87-023

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed September 2, 1988

Motion for Clarification Denied October 28, 1988

*Jeffrey L. Amestoy, Attorney General*, and *David Tartter, Assistant Attorney General*, Montpelier, for Plaintiff-Appellant.

*Stephen S. Blodgett* and *Paul S. Volk* of *Blodgett & Watts*, Burlington, for Defendant-Appellee.

**Costello, D.J.** (Ret.), Specially Assigned. On January 20, 1986, Frank Evans was found murdered in his Barre apartment. While in custody on an unrelated charge, defendant confessed to the crime. He later filed a motion seeking to have his confession suppressed, and the district court granted the motion, ruling that his

confession was involuntary and that the purported waiver of his Fifth Amendment rights was invalid. The State brought this interlocutory appeal pursuant to V.R.A.P. 5(b), and we affirm.

The trial court's detailed findings of fact describe the following sequence of events. An investigation team was formed soon after the murder, consisting of the Washington County state's attorney, an investigator from that office, and detectives from the Barre City police department and the Washington County sheriff's department. Defendant, who had resided with the victim, was regarded as the principal suspect, but he could not be located. The investigating team then became aware of unrelated, simple assault charges that had been pending against defendant since a New Year's Eve fracas in Montpelier. The assault citation required defendant to appear in court for arraignment on February 3, 1986, and the team planned to make contact with him at that time. Because the team wished to question defendant in a noncustodial setting and without the presence of counsel, the state's attorney decided not to file the information and affidavit regarding the assault charge.

Defendant failed to appear for the scheduled arraignment, however, and efforts to locate him continued to be unavailing. The team decided to obtain an arrest warrant on the simple assault charge and to use this pretext as a means of finding defendant and questioning him regarding the homicide. An information was filed on February 7, 1986, and a warrant was issued based on his earlier failure to appear. An investigator from the state's attorney's office circulated a nationwide "wanted person" bulletin, using the National Crime Information Center (NCIC) computer.

On March 13, 1986, defendant was arrested in Florida and arraigned as a fugitive from justice. At arraignment on this charge he requested counsel, and the court appointed a public defender. The Vermont investigation team was informed of the arrest and immediately left for Florida to interrogate him. Upon arrival, the team was informed that defendant had been assigned counsel on the fugitive from justice charge and that he was being held in custody pending further proceedings on that charge. However, the team members made no effort to contact the appointed counsel before questioning him.

A Barre City police detective and the Washington County sheriff met with the defendant, who was still in custody, on March 15, 1986, two and one-half days after his arraignment. Defendant had

yet to consult with his appointed attorney, although he had requested such a meeting once in writing and at least once orally.

The two police officers began their interrogation with amicable conversation about defendant's travels to Florida and about mutual acquaintances in Vermont. Forty minutes after they began questioning him, the officers read a *Miranda* warning. Defendant was asked if he understood each right after it was read to him, and he indicated that he did. Defendant then orally agreed to waive those rights, and the interrogation proceeded.

Approximately thirty minutes after the *Miranda* warning was given, defendant was asked about the Evans murder. At no time until this point, approximately one hour and fifteen minutes after confronting him, had the officers mentioned the homicide investigation. Although he initially denied the murder, defendant confessed his guilt soon after he was questioned directly about the killing. He then agreed to a taped interview, which was conducted after the two police officers consulted with the state's attorney about the questions to be asked. The following day, March 16, 1986, defendant signed a written confession.

On March 17, 1986, defendant waived extradition and was transported back to Vermont. A second written confession was obtained on the morning after his arrival. Subsequently, he met with counsel for the first time since his arrest in Florida, and was then arraigned on a charge of first degree murder.

Defendant later filed a pretrial motion to suppress all inculpatory statements, written and oral, made to the investigating team. After a series of hearings, the trial court issued findings of fact and conclusions of law and granted defendant's motion. The ruling was based upon a "totality of the circumstances" analysis, and significant weight was assigned to the following factors: defendant's age of nineteen years, his eighth grade education, his inexperience with the criminal justice system, his isolation for more than two days prior to interrogation, and the absence of counsel. The court also emphasized the investigation team's intent to question defendant in a noncustodial, uncounselled setting and their failure to inform defendant regarding the subject matter of the questioning. The court concluded that the State had failed to prove either that defendant's *Miranda* waiver was voluntary, knowing, and intelligent or that his confession was voluntarily given. We affirm the court's ruling on the suppression motion, but we do so on other grounds.

The State argues first that the trial court erred in relying upon the factors cited in its totality of the circumstances analysis. It is unnecessary to address that contention, however, because the trial court's approach was rendered inapplicable by a single factor: defendant's request for counsel. Once a criminal defendant has invoked his right to counsel under the Fifth Amendment,* he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards* v. *Arizona*, 451 U.S. 477, 484-85 (1981). If the authorities initiate further interrogation in these circumstances, then any waiver of the defendant's right to counsel for that interrogation is invalid. *Michigan* v. *Jackson*, 475 U.S. 625, 636 (1986).

Here, the lower court found that defendant requested counsel at his Florida arraignment on the fugitive from justice charge and that he made further requests to see his attorney while he was incarcerated. That court's findings also indicate that, despite this state of affairs, the investigation team proceeded to interrogate him in an uncounselled setting. Therefore, under the "bright line" rule enunciated in *Edwards* and its progeny, we hold that the trial court was correct in concluding that defendant's waiver of his Fifth Amendment rights was invalid. In reaching this conclusion, we acknowledge that two key issues are raised by the facts of this case: (1) whether defendant invoked this Fifth Amendment right to counsel at the Florida arraignment, and (2) whether any such invocation remained effective at the subsequent interrogation.

In *United States ex rel. Espinoza* v. *Fairman*, 813 F.2d 117 (7th Cir.), *cert. denied*, 483 U.S. 1010 (1987), the Seventh Circuit resolved these same issues in the context of a markedly similar factual situation. There, as here, defendant Espinoza was arrested

---

* The Fifth and the Sixth Amendment provide a criminal defendant with two distinct rights to counsel. No Sixth Amendment analysis is included here because the constitutional right to counsel under that Amendment had not yet attached at the time of the interrogation regarding the murder. The Sixth Amendment right to counsel attaches only when a "critical stage of the prosecution" begins. *United States* v. *Wade*, 388 U.S. 218, 237 (1967). As the Supreme Court held in *Miranda* v. *Arizona*, 384 U.S. 436 (1966), however, the Fifth Amendment provides "an individual held for interrogation . . . the right to consult with a lawyer and to have the lawyer with him during interrogation . . . . " *Id.* at 471.

and arraigned on a relatively minor charge. He requested counsel, and a public defender appeared on his behalf at the arraignment. While Espinoza remained in custody, police investigation indicated his possible involvement in a recent homicide. In the interview that followed, Espinoza waived his rights under *Miranda* and confessed to the murder.

After Espinoza's conviction on the murder charge was affirmed on appeal, a federal district court granted a habeas corpus petition, ruling that his confession should have been suppressed. The Seventh Circuit upheld the district court's decision on Fifth Amendment grounds, and its opinion included a painstaking analysis of the very issues presented here.

First, because Espinoza did not assert his constitutional rights at the interrogation itself, the court set out to determine whether his earlier request for counsel at the arraignment constituted an invocation of his Fifth Amendment right to counsel. Citing *Michigan* v. *Jackson* and *Connecticut* v. *Barrett*, 479 U.S. 523 (1987), the court rejected the State's argument that this request was no more than an assertion of Espinoza's Sixth Amendment right as an accused in that particular prosecution. *Jackson* and *Barrett* make clear, as the court explained, that a broad interpretation must be given to a defendant's request for counsel, and that a court must presume, absent evidence to the contrary, that such an individual has invoked the full extent of his constitutional right to counsel. See *Jackson*, 475 U.S. at 633, and *Barrett*, 479 U.S. at 529. Therefore, the *Espinoza* court reasoned, it must be presumed that a defendant who requests or accepts counsel at an arraignment is invoking both his Sixth Amendment and his Fifth Amendment rights. *Espinoza*, 813 F.2d at 123. Because the State presented no evidence indicating that Espinoza intended to limit his invocation to the Sixth Amendment, the court concluded that his unqualified acceptance of counsel at the arraignment was an assertion, rather than a waiver, of his Fifth Amendment right. *Id.*

The Seventh Circuit went on to decide whether this invocation at the arraignment remained effective at the subsequent, but unrelated, murder interrogation. The court first held that, once asserted, the Fifth Amendment right to counsel terminates "only when the heightened potential for state-coerced self-incrimination ends — upon the release of the individual from police custody." *Id.* at 125. The court then concluded the Espinoza's invocation of his right at the arraignment also extended to the later

interrogation regarding the murder. *Id.* at 126. If the rule were otherwise, the court reasoned, then the prophylactic purpose of the Fifth Amendment would be defeated because the heightened possibility of state "overreaching" continues to exist regardless of the timing or the subject matter of custodial interrogation. Citing *Edwards* v. *Arizona,* 451 U.S. at 484-85, the court held that the waivers obtained from Espinoza at the murder interrogation were invalid because the State initiated the questioning.

We adopt the reasoning of the Seventh Circuit. Here, defendant asked that an attorney be appointed to represent him in dealing with the State. We will not assume that defendant was in some way limiting his request for legal counsel; indeed, we must presume that defendant was invoking both his Sixth Amendment right and his Fifth Amendment right to counsel, and the State has not shown otherwise. As the Supreme Court has observed, an individual requesting counsel at his arraignment does not know which constitutional right he is invoking. *Jackson,* 475 U.S. at 633-34 n.7 (quoting *People* v. *Jackson,* 421 Mich. 39, 63-64, 365 N.W.2d 56, 67 (1984)). We hold that defendant's invocation of his Fifth Amendment right remained effective at the time of the interrogation, and that, because the State impermissibly initiated that interrogation, his purported waivers of this right were invalid.

*Affirmed.*