**UNITED STATES of America, Plaintiff,**

v.

**Patrick B. WALLACE, Defendant.**

No. 93–30037.

United States District Court,
C.D. Illinois.

Dec. 3, 1993.

David E. Risley, Asst. U.S. Atty., Springfield, IL, for plaintiff.

Stanley N. Wasser, Feldman & Wasser, Springfield, IL, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is Defendant's Motion to Suppress oral statements (Doc. # 19) which he reportedly made to the investigating officers in this case on February 9, 1991. Defendant's Motion to Suppress raises two Fifth Amendment issues: (1) whether Defendant's Fifth Amendment right to remain silent was violated by Officer Baird's questioning once it was known that Defendant's attorney had advised him not to talk; and (2) whether Defendant validly waived his right to remain silent.[1] After review of the evidence, the written memoranda and the oral arguments presented at the hearing held November 24, 1993, the Court finds that the Defendant's Motion to Suppress must be denied.

## BACKGROUND

The following facts are relevant and undisputed. On the evening of February 8, 1991, Defendant was riding as a passenger in a car which was pulled over by Officer Dennis E. Baird for travelling in excess of the posted speed limit. After questioning, Officer Baird took the driver into custody and proceeded to question Defendant. Believing that Defendant might be armed and dangerous, Officer Baird performed a "pat-down" of Defendant according to the strictures of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The parties do not dispute that Officer Baird's "pat-down" was warranted.

During the pat-down, Officer Baird felt a bulge in Defendant's pocket and asked Defendant what it was. Defendant told Officer Baird that it was $8,000.00 in United States Currency to be used to bond his brother out of jail in Chicago. It is fair to say that the large amount of currency and various statements made by Defendant aroused Officer Baird's suspicions. However, Officer Baird testified that, although he found Defendant's story inconsistent with other statements made by the driver, he also did not have probable cause to arrest Defendant and, in fact, did not do so. Because Defendant neither owned nor knew the owner of the car he was riding in, Officer Baird ordered the car towed and told Defendant that he would be riding with Officer Kilby, the backup trooper, to the State Police Headquarters ("Headquarters"). At no time did either Officer indicate to Defendant that he was under arrest, nor did they place Defendant in handcuffs.

When Defendant arrived at Headquarters, Officer Kilby seized Defendant's money, counted it and gave Defendant a receipt for $8,840.00. While Officer Kilby counted the money, Defendant made a phone call to his attorney, who advised him not to speak to the Officers.

Apparently, when Officer Baird arrived at Headquarters, he was informed that Defendant had spoken with his attorney,[2] although at no time did Defendant expressly request to consult with his attorney or to have his attorney present. After giving Defendant his *Miranda* warnings and a Written Statement of Constitutional Rights and Waiver, which Defendant signed after reading, Officer Baird told Defendant that he wished to question him. Officer Baird then asked Defendant what his attorney advised him to do; Defendant responded that his attorney advised him not to talk.

At this point, material facts become disputed. Defendant contends that he told the Officers he intended to follow his attorney's advice not to talk. However, the Officers testified that Defendant told them he was not going to follow his attorney's advice and would be willing to answer their questions.

---

1. Defendant has not asserted that his right to have an attorney present during questioning was violated, and thus the Court's review is limited to whether Defendant's Fifth Amendment right to remain silent was violated.

2. Both Officer Kilby and Defendant testified that Officer Kilby was aware that the call Defendant placed was to his attorney because he could hear Defendant's portion of the conversation while he counted the money.

Although it is undisputed that the Officers proceeded to question Defendant, Defendant testified that he made no statements to the Officers. The Government contends, however, that Defendant made the following statements. Defendant allegedly told the Officers that he was travelling to Chicago to bond out his brother, Louis Wallace, from jail in Cook County; that his mother gave him the $8,000.00 (at the evidentiary hearing, Defendant made the same statement); and, in discussing his past activities, Defendant stated that he bought and used drugs; that he would stick a gun in someone's face if he had to do so in order to obtain money to buy drugs; and that he was able to buy weapons freely around Springfield. After being questioned, Defendant ultimately was driven home by one of the troopers.

## DISCUSSION

■ The first issue in this case, as raised by Defendant, is whether Officer Baird's question, "are you going to follow your attorney's advice" violates the Fifth Amendment. The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." Thus, individuals held in custody or deprived of their freedom of action in a significant way must be advised that they have the right to remain silent and to have an attorney present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612–13, 16 L.Ed.2d 694 (1965). Although individuals possess these rights at all times, the Fifth Amendment is violated only when the police question a person in custody who has indicated a desire to remain silent. *Id.* at 444, 86 S.Ct. at 1612. "If a person in custody indicates in any manner at any stage of the process that he wishes to consult with an attorney before speaking" or "indicates that he does not wish to be interrogated," then all questioning must cease, even if this person has already "answered some questions or volunteered some statements." *Id.* at 444–45, 86 S.Ct. at 1612. Furthermore, any subsequent statements elicited from the suspect cannot be used at trial, unless the suspect initiates further communication and waives this right voluntarily, knowingly and intelligently. *Id.* at 444–445, 86 S.Ct. at

1612–13; *Moran v. Burbine*, 475 U.S. 412, 418, 106 S.Ct. 1135, 1139, 89 L.Ed.2d 410 (1985); *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); *United States ex rel. Espinoza v. Fairman*, 813 F.2d 117, 126 (7th Cir.1987).

Since the Fifth Amendment is implicated only when a person has been taken into custody, or an equivalent situation, the issue of whether Defendant was in custody at the time he made the alleged statements is crucial. Both parties concede that Defendant was never formally arrested. Not surprisingly, however, the Government argues that Defendant was not in custody because (allegedly) he voluntarily accompanied Officer Kilby to Headquarters and was free to leave once he arrived. Conversely, Defendant argues that he was in custody because he did not feel free to leave Headquarters and was given *Miranda* warnings indicating that Officer Baird also viewed this as a custodial situation.

■ Short of formal arrest, "custody" is difficult to define. Generally, neither a "coercive environment," *California v. Beheler*, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983), nor the inability to leave (or, more precisely, a reasonable belief that one is not free to leave) constitutes the kind of custody or interference with freedom of movement which requires *Miranda* warnings before questioning. W.R. LaFave, *Search & Seizure*, § 9.2(g) at 399 (2nd ed. 1987). Thus, Defendant's belief that he was not free to leave does not, by itself, entitle him to Fifth Amendment protection. However, because *Miranda* warnings were given, the Court is willing to assume, for purposes of this Motion, that the Fifth Amendment was put into play.

In *Moran v. Burbine*, 475 U.S. 412, 418, 106 S.Ct. 1135, 1139, 89 L.Ed.2d 410 (1985), the Supreme Court held that the Fifth Amendment belongs to the defendant, not the defendant's attorney. This means that the Fifth Amendment does not require the police to mold their conduct to a specific code of behavior wholly unconnected to a defendant's personal assertion of his/her Fifth Amendment right. *Id.* at 424–25, 106 S.Ct.

at 1142–43. Rather, the police may proceed with questioning until the defendant personally asserts the right to remain silent or asks for an attorney. *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612–13. However, once these rights are asserted, all questioning must cease. *Id.*

■ The issue, as presented, is whether Defendant's statement regarding his attorney's advice constitutes a personal assertion of his right to remain silent. Defendant argues that when he told Officer Baird that his attorney advised him not to answer any questions, *Miranda* required cessation of all questioning, rendering Officer Baird's subsequent question, "do you intend to follow this advice," unconstitutional.

Defense counsel's argument is flawed for several reasons. First, Defendant's statement that his attorney advised him not to talk does not qualify as an assertion of his Fifth Amendment right to remain silent. Defendant did not ask to consult with an attorney, he merely conveyed the substance of his attorney's advice; thus, Defendant's statement did not indicate that he wished to remain silent. Second, Officer Baird's question, "do you intend to follow your attorney's advice" was aimed at determining whether Defendant intended to assert his right to remain silent or waive it, and thus is not the kind of interrogation prohibited by either the Fifth Amendment or *Miranda* because it does not lead to an incriminating answer. Therefore, the Court finds that Defendant's Fifth Amendment rights were not violated at the point where Officer Baird asked Defendant whether he intended to follow his attorney's advice.

The waiver issue requires separate analysis. To effectively waive Fifth Amendment rights, a defendant must do so voluntarily, knowingly, and intelligently. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. *See also Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986).[3] At the evidentiary hearing, the Government asserted that Defendant told Officer Baird he intended to disregard his attorney's advice and answer questions, thus waiving his Fifth

Amendment privilege. Conversely, Defendant testified that he informed Officer Baird he intended to follow his attorney's advice to remain silent, thus invoking his Fifth Amendment privilege.

■ Although questions of credibility are typically reserved for the jury, in this case, the Court must choose which story to believe in order to resolve the legal question of waiver presented by Defendant's Motion to Suppress. Choosing to believe Defendant's story would end the matter. The Motion to Suppress would be granted because once Defendant asserted his right to remain silent, Officer Baird's attempt to elicit statements from Defendant through interrogation would violate the Defendant's Fifth Amendment right to remain silent. Choosing to believe the Government's story, however, simply results in denial of the Motion to Suppress, admission of the alleged statements at trial, and a chance for the jury to decide the ultimate credibility question of whether Defendant in fact made the alleged statements. Given that a resolution by the Court in favor of Defendant at this stage would take the credibility questions away from the jury, the Court finds, for purposes of this motion, that the Government witnesses are telling the truth and will resolve the legal issues accordingly.

■ According to the Government's version of the story, Defendant told Officer Baird that he was prepared to disregard his attorney's advice and answer questions. Defendant contends that, even if the Court finds that he waived his Fifth Amendment rights, his waiver was involuntary because it was the product of a "coercive environment." Defendant never actually described particular aspects of Headquarters as coercive, but it is clear that Headquarters did not contain a jail nor was Defendant locked up or physically restrained in any way. The outer lobby was large, lighted, and filled with various people. Although the troopers were uniformed, Defendant was permitted to move freely about the room. Further, the room where he was questioned was not, by reasonable standards,

---

**3.** The burden of establishing a valid waiver rests on the government. *Miranda v. Arizona,* 384

U.S. 436, 476, 86 S.Ct. 1602, 1628–29, 16 L.Ed.2d 694 (1965).

small and isolated, despite Defendant's characterization of it as a small room. Nor was the room specifically designed for interrogation. Rather, although located away from the front lobby, the room was well-lit and served as a secretarial pool, where several tables and chairs were located.

Defendant's "coercion" argument thus appears to focus on the fact that he did not feel free to leave. When pressed by the Court to describe the basis of this feeling, Defendant appeared to indicate that he did not feel free to leave because he had no way to leave. In other words, he needed the troopers to take him home. This belief is understandable given the following facts.

When Defendant finished speaking with his attorney and had obtained a receipt for his money, he asked Officer Kilby if he was free to leave. Apparently, Officer Kilby told Defendant that he had to wait for Officer Baird to arrive. Defendant thus concluded that he would not be transported home, although he wanted to leave and expressed the desire to do so. Nonetheless, although these facts clearly indicate that Defendant was "detained," neither the fact that he felt like he was in a "coercive environment," nor his feeling that he was not "free to leave" are relevant for purposes of a decision in this case.

A "coercive environment" alone is not enough to compel individuals to make incriminating statements against themselves, and thus *Miranda* warnings are not required. *California v. Beheler*, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983). This rule recognizes that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is ultimately part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). Nor, as indicated previously, is the feeling or belief that one is not free to leave evident of a custodial situation, although it certainly indicates that a seizure has taken place. W.R. LaFave, *Search & Seizure*, § 9.2(g) at 399 (2nd ed. 1987).

Defendant's argument, however, does not appear to be about the coercive nature of the "environment" *per se;* essentially, it is an argument about what Defendant views as "coercive questioning." Defendant believes that Officer Baird's questioning was "coercive" because it was continued after Defendant told Officer Baird that his attorney advised him to remain silent. Consequently, Defendant concludes that any waiver he may have made was involuntary and thus ineffective, because it was the product of coercion. *See Burbine*, 475 U.S. at 421, 106 S.Ct. at 1140–41. Defendant further concludes that any statements made pursuant to this waiver are inadmissible on Fifth Amendment grounds. *Miranda*, 384 U.S. at 476, 86 S.Ct. at 1628–29.

Although initiation of questioning by police after a defendant asserts the right to remain silent makes any statements (and thus any waivers) by a defendant inadmissible at trial on Fifth Amendment grounds, *Id.; Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), this is not such a case. The questions Officer Baird asked Defendant were not the kind of interrogation which is prohibited by the Fifth Amendment, because they were not calculated to elicit an incriminating response. Consequently, any statements made by Defendant in response to these questions constitute a valid waiver of his Fifth Amendment rights, and all statements made after the initial waiver are admissible at trial. *Moran v. Burbine*, 475 U.S. 412, 421–24, 106 S.Ct. 1135, 1140–42, 89 L.Ed.2d 410 (1985).

## CONCLUSION

Defendant's statement that he intended to disregard the advice of his attorney and answer questions constitutes a valid waiver of his Fifth Amendment rights under *Miranda.* Consequently, the alleged statements by Defendant regarding the source of the $8,840.00, and his involvement with drugs in the Springfield area will be admitted at trial. The Court makes clear, however, that it is not deciding whether Defendant actually made the statements alleged by the Government; the Court is only deciding that the Government's allegations regarding these

statements may be admitted as evidence. IT IS THEREFORE ORDERED that Defendant's Motion to Suppress his oral statements (Doc. # 19) is DENIED.