PEOPLE v CRUSOE

Docket No. 84017. Argued June 7, 1989 (Calendar No. 9). Decided December 7, 1989.

Monroe D. Crusoe was convicted of bank robbery, following a bench trial in the Ingham Circuit Court, Robert Holmes Bell, J. The Court of Appeals, WEAVER, P.J., and MICHAEL J. KELLY and J. R. KIRWAN, JJ., reversed, holding that admission of the defendant's statements to the FBI concerning his involvement in the bank robbery, made while he was in custody for an unrelated offense, violated his Fifth Amendment right to be represented by counsel during custodial interrogation (Docket No. 89990). The Court certified that its decision conflicted with *People v Buckles,* 155 Mich App 1 (1986). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justices BRICKLEY and GRIFFIN, the Supreme Court *held:*

The defendant's request for counsel at his arraignment on charges of breaking and entering and assault invoked his Sixth Amendment right to counsel and prohibited subsequent police-initiated postarraignment interrogations on those charges. The request did not invoke his right to counsel under *Miranda v Arizona,* 384 US 436 (1966), in the context of a custodial interrogation, and therefore a subsequent police-initiated interrogation concerning an unrelated bank robbery charge was not prohibited. Thus, his voluntary and knowledgeable waiver of *Miranda* rights during the interrogation was valid, and his statements were admissible at trial.

1. Once a defendant has been formally charged, the Sixth Amendment guarantees the right to counsel at postarraignment interrogations on those charges. The Fifth Amendment prohibits police-initiated interrogation only after a suspect has invoked the right to counsel under *Miranda* during a custodial interrogation. While a defendant remains in continuous custody, a request for counsel during a custodial interrogation on any charge cannot be circumvented by police-initiated interro-

REFERENCES

Am Jur 2d, Criminal Law §§ 734-736, 742, 747, 791-797.

Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.

gation regarding a new charge. The rationale for extending the right to counsel under *Miranda* to separate investigations while a person remains in continuous custody does not support extending a defendant's Sixth Amendment right to counsel invoked at an arraignment to postarraignment interrogations on unrelated charges.

2. In this case, the defendant did not invoke his right to counsel under *Miranda* in the context of a custodial interrogation. His request for appointed counsel was made as a routine arraignment matter. Thus, a subsequent police-initiated interrogation regarding the bank robbery charge was not prohibited, and his waiver of his rights and his statements implicating himself in the robbery were admissible at trial.

Reversed.

Justice CAVANAGH, joined by Justices LEVIN and ARCHER, dissenting, stated that because the defendant invoked his Fifth and Sixth Amendment rights to the assistance of counsel when he requested appointment of counsel at his arraignment on unrelated charges prior to questioning by authorities, his statements made in response to police-initiated interrogation should have been suppressed.

A suspect who has expressed a desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available, unless the accused initiates further communication, exchanges, or conversations with the police. A suspect's waiver of *Miranda* rights at police-initiated ·custodial interrogation following a request for counsel at an earlier interrogation is not sufficient to demonstrate that a waiver of the Fifth Amendment right to remain silent was voluntary. It is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect, even when the crime investigated in the subsequent police-initiated interrogation was unrelated to the crime investigated at the interrogation in which the suspect requested counsel. In order to ensure that a suspect's waiver of the Fifth Amendment right to remain silent is voluntary and not coerced, courts may suppress any statement obtained during police-initiated questioning in the absence of counsel if the suspect requested counsel at a preceding interrogation.

A suspect's request for an attorney during custodial interrogation, as well as in other contexts such as at arraignment, demonstrates that the suspect wants a lawyer to help in dealing with police questions. The request initiates the waiver

protections of *Edwards v Arizona*, 451 US 477 (1981). Where an accused requests an attorney, either before a police officer or a magistrate, it should not be expected that the accused articulate exactly why or for what purposes counsel is sought. The fact that a request for an attorney has been made indicates a belief on the part of the accused of insufficient capability of dealing with adversaries singlehandedly. In this case when the defendant requested counsel at his arraignment, he felt that he was not sufficiently capable of dealing with his adversaries singlehandedly. His request expressed a desire for a lawyer's help, not just with formal legal proceedings, but with all subsequent adversarial confrontations, including custodial interrogation. His request was as effective an invocation of the Fifth Amendment right to counsel as a request to a police officer during interrogation would have been.

While burdensome, barring law enforcement officials, even those from some other jurisdiction, from questioning a suspect about an unrelated matter while in custody and after counsel has been requested to assist in answering questions about the crime for which the suspect was arrested would have the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogations and of informing courts under what circumstances statements obtained during such interrogations are not admissible.

170 Mich App 403; 427 NW2d 634 (1988) reversed.

CRIMINAL LAW — RIGHT TO COUNSEL — POLICE-INITIATED INTERROGATION.

Once a defendant has been formally charged, the Sixth Amendment guarantees the right to counsel at postarraignment interrogations on those charges; the Fifth Amendment prohibits police-initiated interrogation only after a suspect has invoked the right to counsel under *Miranda v Arizona*, 384 US 436 (1966), during a custodial interrogation; while a defendant remains in continuous custody, a request for counsel during a custodial interrogation on any charge cannot be circumvented by police-initiated interrogation regarding a new charge; the rationale for extending the right to counsel under *Miranda* to separate investigations while a person remains in continuous custody does not support extending a defendant's Sixth Amendment right to counsel invoked at an arraignment to postarraignment interrogations on unrelated charges (US Const, Am V, VI).

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*) for the defendant.

BOYLE, J. This Court granted leave to appeal in this case, limited to the issue whether the trial court erred in holding the defendant's confession admissible at trial. That issue requires that we determine whether the defendant's request for appointed counsel at arraignment invoked the right to counsel under *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and thus prohibited subsequent police-initiated custodial interrogation on unrelated charges. We hold that the Court of Appeals erred in extending the no-access rule of *Michigan v Jackson,* 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986), to a charge unrelated to that for which the defendant had invoked his Sixth Amendment right to counsel. Once a defendant has been formally charged, the Sixth Amendment guarantees prohibit subsequent police-initiated postarraignment interrogations on the charges. *Michigan v Jackson, supra.* Under the facts in this case, there was no violation of the defendant's Sixth Amendment rights[1] because the defendant had not been formally charged with the bank robbery at the time of either interrogation.

In regard to defendant's Fifth Amendment right to counsel, *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), and *People v*

---

[1] See *Kirby v Illinois,* 406 US 682, 688-689; 92 S Ct 1877; 32 L Ed 2d 411 (1972). The Sixth Amendment right to counsel arises and attaches automatically after the initiation of adversarial judicial criminal proceedings, limited to the specific crimes for which the state has begun prosecution.

*Paintman,* 412 Mich 518; 315 NW2d 418 (1982), cert den 456 US 995 (1982), prohibit police-initiated interrogation only after a suspect has invoked his right to counsel under *Miranda* during a custodial interrogation. In addition, the United States Supreme Court's most recent Fifth Amendment confession decision, *Arizona v Roberson,* 486 US 675; 108 S Ct 2093; 100 L Ed 2d 704 (1988), holds that a suspect's request for counsel during a custodial interrogation on any charge could not be circumvented by police-initiated interrogation on a new charge while the defendant remained in continuous custody.

In this case, the defendant did not invoke his right to counsel under *Miranda* in the context of a custodial interrogation, and thus, a subsequent police-initiated interrogation in relation to the bank robbery charge was not prohibited. Therefore, the defendant's voluntary and knowledgeable waiver of his rights under *Miranda* was valid, and his statements were admissible at trial.

Further, while the United States Supreme Court refused to comment on the specific issue in *Michigan v Jackson, supra,* whether a defendant invokes his Sixth and Fifth Amendment rights to counsel at an arraignment, we disagree with the Court of Appeals that the rationale of *Roberson* for extending the right to counsel under *Miranda* to separate investigations while an individual remains in continuous custody supports extending a defendant's Sixth Amendment right to counsel invoked at an arraignment to postarraignment interrogations on unrelated charges.

Accordingly, we reverse the decision of the Court of Appeals that defendant's statement should have been suppressed and reinstate the determination of the trial court.

I

The defendant was charged with and convicted of bank robbery[2] after a bench trial in Ingham Circuit Court and was sentenced to serve from ten to twenty years in prison.[3]

At the preliminary examination, defense counsel objected to the admission of defendant's statement incriminating himself in the robbery, which he made during an interrogation initiated by FBI agents on May 7, 1985.[4] The defendant argued he asserted his right to remain silent when Detective Miller of the Lansing Police Department questioned him on May 6, 1985, about the same robbery.[5]

The magistrate addressed the issues regarding the effect of later questioning once a person has invoked his right to counsel and to silence[6] and

[2] MCL 750.531; MSA 28.799.

[3] The judgment was entered on October 8, 1985, and the defendant was sentenced on November 6, 1985.

[4] The agents interviewed the defendant while he was in the custody of the Lansing police on charges of assault and breaking and entering, which were unrelated to the bank robbery.

[5] Defense counsel objected to the admission of the statement on two grounds: (1) there had not been a sufficient showing of a link between his client to the crime prior to the time that the confession was admitted, and (2) the failure of the court to address the issue whether or not his client had been spoken to earlier, the effect of repeated questioning after a defendant has asserted the right to remain silent, and the claim that the FBI agent used trickery or deceit in questioning and attempting to extract a confession from the defendant.

[6] The judge stated:

[T]he second part of the objection, however, raises some very, very complicated issues, probably one of the most complicated areas of the law in existence, and that is dealing with the question of once a person has invoked his right to counsel and to silence, the effect of later questioning.

We've got a recent Supreme Court of Michigan case on the subject of questioning after arraignment that could be applicable here. We've got a lengthy Michigan Supreme Court opinion

conducted a *Walker*[7] hearing inquiring into the voluntariness of the defendant's confession and the events occurring prior to, and during both interrogations, as well as the arraignment on unrelated charges.[8]

Detective Miller questioned the defendant regarding the bank robbery at approximately 11:30 A.M. on May 6, 1985, while the defendant was in custody on other charges.[9] The detective testified he advised the defendant of his *Miranda* rights and that the defendant signed a waiver, indicating a willingness to talk. He further testified that the defendant never said he did not want to talk or

on voluntariness of statements and confessions that could be applicable here.

\* \* \*

So I don't believe that I can, at this point, without examining those authorities—not only Michigan law, but *Edwards v Arizona* and the other cases that dealt with—I think there's a case out of Detroit that dealt—that went to the Supreme Court of the United States and dealt with questioning after someone invoked the right to silence. There was questioning in that case and it was found to be okay. But invoking the right to an attorney as well as silence leads to a little different body of law.

So before admitting the statement, we're going to have to examine those authorities and make a determination if we can based on these facts. We may need some additional facts before making a determination.

During cross-examination, defense counsel did question the FBI agent regarding whether she was aware that the defendant had been arraigned on other charges earlier in the day, and if counsel had been appointed at the time of the second interrogation. However, the defendant did not raise the issue whether the defendant's request for an attorney at an arraignment on unrelated charges prior to the interrogation by the FBI agents should result in the suppression of his statement.

[7] See *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[8] The magistrate questioned the detective who conducted the first interview with the defendant, and the FBI agent who interrogated the defendant the following day.

[9] The detective testified that he was sure the defendant had not been to court prior to the interview because the warrant had not been signed with regard to those charges.

wished to remain silent, and that when the defendant denied any knowledge of the bank robbery the interview ended.

On direct examination, the defendant testified that the questioning stopped because he would not give answers to Detective Miller's questions concerning the robbery. However, on cross-examination he admitted he never said he did not want to answer questions, only that he did not wish to speak anymore after saying that he had not been involved in the bank robbery.

Later that same day, the defendant was arraigned on the charges of breaking and entering an occupied dwelling and assault with intent to commit great bodily harm, and was cited for failure to appear for trial on an outstanding bench warrant for an unrelated offense. The judge first questioned the defendant regarding the failure to appear for trial,[10] and then addressed the new

---

[10] The first matter the court addressed was the bench warrant issued by the court because the defendant failed to appear for a jury trial:

*The Court:* That's fine. Okay. Well, Mr. Crusoe, it's my opinion or my decision that you were sent a notice to the proper address.

*Defendant:* What address is that, sir?

*The Court:* 1127 Hamilton.

*Defendant:* 1127—all right, then. I—did receive a notice. All right, then. But, I told my lawyer that I'm not pleading guilty to that.

*The Court:* Nobody asked you to plead guilty. You were supposed to be here for trial.

*Defendant:* When was it set?

*The Court:* April . . .

*Defendant:* I—I still—I still haven't received it.

*The Court:* Well, we sent it.

*Defendant:* I mean, I haven't received it. I mean, it might be my fault, but I haven't received it.

*The Court:* That's fine. You're assessed costs of $100 or 15 days. Your new bond is $2,000—ten percent. Would you like to apply for a lawyer again? I'll note that you want Court attorney. Is that correct?

charges.[11] At the arraignment the defendant ac-

*Defendant:* Your Honor, I—I still don't get to understand what . . .

*The Court:* Here's the understanding: Our clerks sent . . .

*Defendant:* I mean, please. Please.

*The Court:* . . . you a notice of trial to the address you requested it to be sent.

*Defendant:* To 1127 Hamilton.

*The Court:* You didn't come.

*Defendant:* I . . .

*The Court:* You are in contempt for not coming because you should open your mail. It didn't come back here. We sent it to where you told us to send it.

*Defendant:* Right.

*The Court:* And your lawyer was here. He came here to represent you at a trial in my court. You didn't come. It was assault and battery which I consider a serious matter.

*Defendant:* It is.

*The Court:* That's right. And you're assessed $100 costs for the witnesses who did come. The other bond that you posted in this matter has been forfeited and you're to post a new bond that I've ordered here.

*Defendant:* Your Honor, honestly . . .

*The Court:* Would you like to apply for a lawyer? You also have another, more serious matter, Mr. Crusoe.

*Defendant:* I know, your Honor.

*The Court:* You're gonna [sic] be with us in any event. So what do you want to do?

*Defendant:* Your Honor, I'm trying to get that straightened out. I'm trying to explain to you I did not have no [sic] knowledge of that.

[11] The judge told the defendant he believed that the defendant did have knowledge of his trial date and continued:

*The Court:* Okay. The next matter, Mr. Crusoe is 85-723-FY. You are charged as follows: that at 1426 Knollwood, in count one; in count two at 1412 Knollwood, Lansing, that you did break and enter an occupied dwelling . . .

*Defendant:* Judge, may I say something . . .

*The Court:* . . . house located at 1426 Knollwood, Lansing, Michigan with the intent to commit the felony crime of assault with intent to do great bodily harm less than murder.

*Defendant:* That is my address.

*The Court:* The maximum penalty is 15 years in prison. Well, that's fine. That's why we have preliminary hearings. The maximum penalty on that charge is 15 years in prison, Mr. Crusoe. You are charged in count two that you did assault Marily Gadlin with intent to do great bodily harm less than the

cepted the court-appointed counsel for the breaking and entering and assault charges.

The next day, after the arraignment, two FBI agents conducted another interrogation regarding the bank robbery. The defendant testified that FBI Agent Askin readvised him of his *Miranda* rights, and that he talked to the agents voluntarily and of his own free will.[12] Agent Askin testified that while at first the defendant denied knowledge of the robbery, when she told the defendant that fingerprints had been taken from the bank, he said he would talk, but wanted other people "to go down with him."[13] The defendant then dictated a state-

crime of murder, contrary to law. The maximum for that is ten years and a fine of up to $5,000. Now, you are entitled, sir, to a preliminary examination that will be held within 12 days of today's date. Would you like a preliminary hearing?
*Defendant:* Yes, I would, your Honor.
*The Court:* All right. You are entitled to a lawyer. If you cannot afford counsel, you may apply for a lawyer through our court at public expense. Would you like to apply for a lawyer?
*Defendant:* Yes, I would. Your Honor, can I ask you a couple questions?
*The Court:* What is your question?
*Defendant:* What—what was that—breaking and entering and A & B.
*The Court:* That's a thing to ask your attorney. I cannot give you legal advice, sir.
*Defendant:* That's not legal. I'm just asking a question. What makes thes [sic]—I live there at that address. I been living there for eight months.
*The Court:* Then you should confer with your counsel and advise them [sic] of that.

\* \* \*

*The Court:* Yeah. If you keep talking, it will go up.
*Defendant:* Your Honor, I still can't understand why in the world it's like this.
*The Court:* I suggest that you wait and talk to your counsel.

[12] FBI Agent Askin testified that she advised the defendant of his *Miranda* rights, reading aloud from the standard form, and that the defendant read it as they went along. After reading the waiver section and indicating he understood his rights, the defendant signed the waiver.

[13] He said he walked to the bank wearing his disguise and commit-

ment to Agent Askin implicating himself in the robbery, which he proofread before signing.

Afterwards, the trial judge agreed to accept briefs addressing the issues whether after arraignment and request for counsel a defendant can be questioned on other charges,[14] whether the indication by the interrogator that certain proofs were in existence affected the voluntariness of a defendant's subsequent statement, and whether the advice pertaining to *Miranda* rights given prior to the second interview were sufficient in light of the evidence that in the first interview there was some indication from the defendant that he did not want to answer any further questions.

The judge subsequently denied the motion to suppress the defendant's statement[15] and con-

ted the robbery, that he wore a black jacket and mask, and used a taped-up broom handle to simulate a weapon.

[14] The defendant argued that after he had requested counsel at the arraignment on unrelated charges, the subsequent interrogation by the agents on the following day, constituted a violation of the defendant's Sixth Amendment right to counsel.

[15] In his opinion issued on June 11, 1985, Judge Wood, in response to the question whether obtaining a confession without counsel present after one had been requested on an unrelated charge violates a defendant's Sixth Amendment rights, concluded:

> Sixth Amendment rights are not interfered with when the interrogation concerns factually unrelated crimes.
>
> \*   \*   \*
>
> Under the total circumstances, including the somewhat contradictory testimony of Defendant, this Court makes the factual finding that Defendant did not invoke the right to remain silent when being questioned by Detective Miller or at any time before giving the statement to the FBI.
>
> \*   \*   \*
>
> [This] Court finds no violation of Defendant's *Miranda* right to refuse to answer because it was never invoked.
>
> \*   \*   \*
>
> Defendant contends that the statement should not be admitted as being the product of trickery or deceit. . . . The rule is that deception or trickery do not violate due process or render a confession involuntary provided the means are not calculated

cluded the preliminary examination, holding that
on the basis of all the evidence, including the
statement, the crime charged in the complaint had
been committed, and there was probable cause to
believe the defendant committed it.[16]

Prior to trial, defense counsel brought motions
to quash and suppress the defendant's statement.[17]
On September 4, 1985, Judge Bell conducted pro-
ceedings on the matter and, in his opinion denying
the motion, held in part:

> From a review of the preliminary examination
> transcript and testimony given on September 4,
> 198[5], before This Court it appears the evidence
> demonstrates the defendant at no time told Detec-
> tive Miller he did not want to talk with him, that
> he didn't have anything to say or that he wished
> to remain silent. The record more clearly indicates
> the defendant stated he had no knowledge of the
> bank robbery and wasn't involved in it. The second
> interview by the FBI some twenty-seven hours
> later, again, contained no evidence of defendant
> not wanting to talk or wishing to remain silent.
> Thus, the record does not support defendant's

to procure an untrue statement. . . . The totality of the circum-
stances, including the Defendant's own testimony that the
statement was voluntary and of his own free will demonstrate
that the confession was voluntary. The statement should not be
excluded from evidence for the reason advanced.

[16] The preliminary examination was completed on June 19, 1985,
and the defendant was bound over to the circuit court on the bank
robbery charge to appear on June 26, 1985.

[17] Defense counsel's motions to quash and suppress pertained to the
same factual context, but because of the bindover, he premised one on
the abuse of discretion, and the second one simply on the confession
itself.

The defendant argued that without the use of the statement,
obtained in violation of his Fifth Amendment right to remain silent,
and in violation of his Sixth Amendment right to counsel, the prose-
cutor had failed to establish by sufficient evidence that there was
probable cause to believe that defendant committed the crime in
question.

contention that he asserted his right to remain silent.

\*   \*   \*

This Court is constrained to find no fifth amendment assertion took place at the first interrogation and therefore subsequent questioning was permissible. Even if it were to be assumed that the initial questioning resulted in defendant's assertion of fifth amendment rights, the scrupulous nature with which Detective Miller terminated the interview, the twenty-seven hours [sic] interval between questioning and the second giving of *Miranda* warnings, by itself does not render the subsequent incriminating testimony involuntary.

\*   \*   \*

[W]here the defendant was charged and arraigned on unrelated charges and apparently was to receive court appointed counsel on these charges, recent caselaw would suggest he could not be interrogated as to these unrelated charges without presence of counsel, unless he initiated the conversation with the police. *People v Bladel (After Remand),* 421 Mich 39 [365 NW2d 56] (1984).

\*   \*   \*

The question presented, then, is whether the defendant's assertion of his sixth amendment right to counsel on unrelated matters vitiates his waiver of fifth amendment right to remain silent on this charge. This Court does not believe that it does.

The facts here suggest that defendants [sic] request for Court appointed counsel, or the Courts [sic] initiation of the request, was made as a routine arraignment manner [sic]. It is nowhere suggested that at the arraignment the defendant was interrogated or that an atmosphere of coercion existed. In fact quite the contrary, the evidence suggests that the sixth amendment right was conferred upon him as it pertained to judicial proceedings held in the unrelated charges.

Further, it appears that a clear and unambiguous waiver of *Miranda* rights preceded the second

interview by Special Agent Askin. Accordingly, This Court determines that the assertion of sixth amendment right to counsel did not render the subsequent waiver of counsel on unrelated matters invalid.[18]

At trial, the defendant admitted he robbed the bank and that he told the FBI agent he understood his rights during the interrogation.[19] On the basis of the teller's testimony, the trial judge found beyond a reasonable doubt that a robbery occurred and that there appeared to be no contest as to the truthfulness of the defendant's confession which the court previously had found constitutionally sound:

> This Court is satisfied that the standard for determination of voluntariness is made based upon [sic] a preponderance of the evidence. It appears that this Court has issued an opinion and order following considerably well-drafted briefs, and well-prepared reasoning by both parties on 25th of September of 1985. . . . [T]his Court concluded that on the three issues that the Court had before it, that in fact, constitutionally, there was no violation of the Fifth and Sixth Amendment rights

---

[18] The court also noted:

Defendant's allegations of trickery and deceit used by FBI Special Agent Askins [sic] to coerce a confession from the defendant deserves very close review. . . . In this matter the questioning appears to not have been lengthy, the agents appear to have conducted themselves with civility, the defendant fully understood the implications both of his waiver of rights and the incriminating conclusions potential from the physical evidence.

Thus, despite the stated intention of making it appear the physical evidence alone would implicate guilt, This Court cannot conclude the agents' words were sufficient to overbear the defendant's free will and render the statement involuntary.

[19] The defendant also stated the breaking and entering and assault charges were dismissed at the preliminary hearing on the bank robbery charge.

to counsel, both as it pertained to the alleged existence of the counsel on the date that the statement was made, and this was never shown to be in existence. There was shown to have been a request or demand either made by the court or by the defendant for court-appointed counsel, and it appears further that the issue of waiver of rights to counsel as it pertains to this matter is not before this Court, because this Court has concluded previously, and it does so conclude today, that there was a requisite giving of the so-called *Miranda* rights in their full and complete context by Agent Askin.

\* \* \*

This Court has to conclude, based upon [sic] the incorporation of its earlier rulings on September the 25th, together with the findings of fact that it has just now made, that this statement was in fact a free, voluntary statement made by the Defendant after a waiver of his *Miranda* rights on the particular day of the—I believe it's the 7th of May of 1985.[20]

On appeal,[21] the Court of Appeals reversed the

---

[20] The trial court also found that this case could be distinguished from *People v Bladel (After Remand)*, 421 Mich 39; 365 NW2d 56 (1984), in which this Court reviewed the Sixth Amendment right to counsel in the context of interrogation. In *Bladel*, the defendant was questioned and denied involvement in murders which had taken place in Jackson. He was formally charged with the murders and arraigned, and at arraignment, he requested counsel. The next morning he was readvised of his rights, questioned, and confessed to the murders without having had an opportunity to talk to counsel.

The Court found that, in this case, the authorities could question the defendant without counsel present only if the defendant initiated the conversation, indicated a willingness to discuss the case, was carefully advised of, and then waived, both his Fifth and Sixth Amendment rights.

The United States Supreme Court affirmed the holding of *Bladel* and *People v Jackson*, the consolidated case, that confessions obtained during custodial interrogation after an individual requests counsel at arraignment on the same charges, but before the individual is able to consult with counsel, are inadmissible at trial as a violation of the Sixth Amendment right to counsel.

[21] On appeal, the defendant argued that his confession must be

defendant's conviction on the basis of its belief that the trial court erred in refusing to suppress the written confession made by the defendant to the FBI agents:

> When defendant requested counsel at his arraignment on the charges of breaking and entering and felonious assault, we presume that he was invoking both his Sixth Amendment right to be represented at every critical stage of the prosecution of those two charges as well as his Fifth Amendment right to be represented during interrogation on the breaking and entering and assault charges or on any other crime for which he may have been a suspect. Thus, the FBI's interrogation of defendant after the arraignment violated defendant's Fifth Amendment right to be represented by counsel during custodial interrogation. [170 Mich App 403, 408; 427 NW2d 634 (1988).]

The Court of Appeals found the reasoning employed by the United States Court of Appeals for the Seventh Circuit in *United States ex rel Espinoza v Fairman,* 813 F2d 117 (CA 7, 1987), persuasive and adopted the analysis of that court:

> [T]he Seventh Circuit concluded that an individual who requests an attorney at arraignment invokes both Fifth and Sixth Amendment protections since that individual is essentially requesting

---

suppressed where the FBI-initiated interrogation occurred after an arraignment and request for court-appointed counsel, even when the interrogation concerned an unrelated charge, and less than twenty-four hours after the defendant exercised his Fifth Amendment privilege against compulsory self-incrimination during an interrogation concerning the same offense.

However, the panel of the Court of Appeals did not address the issue, accepting the trial court's finding that the defendant did not invoke the right to remain silent during the first interrogation. We do not reach this issue and accept the trial court's findings regarding the factual issue whether the defendant invoked the right to silence, and the issue whether his statements were voluntary, which· was determined at a *Walker* hearing.

an intermediary in his or her dealings with the government. Citing *Michigan v Jackson,* 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986), the Court noted that a request for counsel must be broadly rather than narrowly interpreted and that an individual unskilled in the law cannot generally be expected to articulate the particular authority under which his or her constitutional right to counsel is being invoked. The Seventh Circuit held that the authorities should presume that a request for counsel at arraignment invokes both Fifth and Sixth Amendment protections. [*Crusoe, supra,* p 407.]

Recognizing that its opinion conflicted with the opinion in *People v Buckles,* 155 Mich App 1; 399 NW2d 421 (1986),[22] the Court of Appeals certified this case as a conflict. *Crusoe, supra,* p 409.[23]

This Court granted leave to appeal, limited to the issue whether the trial court erred in holding that the defendant's confession was admissible because the defendant had waived his rights under *Miranda v Arizona, supra.*[24]

## II

As a rule, the admissibility of an accused's confession made during a police-initiated custodial interrogation depends on the results of two distinct inquiries. First, courts must determine whether the accused actually invoked his right to

---

[22] The *Buckles* panel distinguished between the Fifth and Sixth Amendment rights to counsel and concluded that the defendant had invoked only the Sixth Amendment right to counsel at his arraignment, and that the right to counsel guaranteed under the Sixth Amendment does not attach until the commencement of an adversarial judicial proceeding. *Crusoe, supra,* p 406.

[23] See Administrative Order No. 1984-2, 418 Mich lxxxii; Mich Ct R A 1-23.

[24] 431 Mich 906 (1988).

counsel.[25] Second, where the accused has invoked his right to counsel, his later statement is admissible only upon a finding that the defendant initiated further discussions with the police and knowingly and intelligently waived the right he had invoked. *Smith v Illinois,* 469 US 91, 95; 105 S Ct 490; 83 L Ed 2d 488 (1984).

The Court of Appeals held that the defendant effectively invoked his Fifth Amendment right to counsel[26] with respect to the bank robbery charge when he availed himself of his Sixth Amendment[27]

---

[25] *Edwards, supra,* pp 484-485. However, while the invocation of the right to counsel under *Miranda* prohibits subsequent police-initiated interrogation, when a defendant invokes the right during interrogation that he wishes to remain silent, the police must cease all questioning at that interview but can then initiate a subsequent interrogation if law enforcement officials "scrupulously" honor the defendant's assertion of the right to remain silent. *Michigan v Mosley,* 423 US 96, 103, n 9; 96 S Ct 321; 46 L Ed 2d 313 (1975).

[26] The right to counsel under *Miranda v Arizona, supra,* which implements the Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any Criminal Case to be a witness against himself" (US Const, Am V; Const 1963, art 1, § 17), stems from the United States Supreme Court's concern about the inherently coercive nature of custodial interrogation:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. . . . [The defendant] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. [*Id.,* pp 478-479.]

[27] The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of Counsel for his defence. [US Const, Am VI; 1963 Const, art 1, § 20.]

The Sixth Amendment right to counsel was held to apply to the states through the Fourteenth Amendment in *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963).

right to counsel at his arraignment on different and unrelated charges. *Post,* p 697. This then, according to the panel, invoked the rule of *Edwards v Arizona* and *People v Paintman* that a criminal suspect undergoing custodial interrogation who has expressed a desire to deal with police only through counsel is not subject to further interrogation by the authorities until counsel has been made available, unless the suspect initiates further communication, exchanges, or conversation with the police. *Edwards, supra,* pp 484-485.[28]

Accordingly, because Crusoe's subsequent statements concerning the bank robbery were made during a police-initiated questioning following his request for counsel at the arraignment on other charges, the Court of Appeals essentially concluded that Crusoe's Fifth Amendment right against compelled self-incrimination was violated, notwithstanding the defendant's apparently voluntary and knowledgeable waiver of this right.[29]

This case requires the resolution of two distinct issues: (1) whether a defendant's request for appointment of counsel at an arraignment invokes both Sixth and Fifth Amendment rights to counsel and, if not (2) whether the Court should extend Fifth Amendment protections to prohibit subsequent police-initiated questioning following a defendant's request for court-appointed counsel at an arraignment on unrelated charges while a suspect remains in custody.[30]

---

[28] Pursuant to *Edwards,* a valid waiver of that right cannot be established by showing that the defendant responded to subsequent police-initiated questioning even when the defendant has been re-advised of his rights. *Id.*

[29] See *State v Stewart,* 53 Wash App 150; 765 P2d 1320 (1989); *Cervi v Kemp,* 855 F2d 702 (CA 11, 1988); *State v Preston,* 150 Vt 511; 555 A2d 360 (1988); *People v Hicks,* 179 Ill App 3d 468; 128 Ill Dec 448; 534 NE2d 630 (1989); *Alston v State,* 554 A2d 304 (Del, 1989).

[30] The dissenting opinion states that "[t]he precise question pre-

III

In concluding that when the defendant requested counsel at his arraignment he invoked his Fifth Amendment right to be represented during interrogation on those charges or any other crime for which he may have been a suspect, *Crusoe, supra,* p 408, the Court of Appeals adopted the reasoning employed by the United States Court of Appeals for the Seventh Circuit in *Espinoza v Fairman, supra.* The *Espinoza* court, relying on *Michigan v Jackson, supra,* held that individuals who assert the right to counsel at an arraignment invoke both their Sixth and Fifth Amendment rights to counsel. However, in my opinion, the *Espinoza* court's reliance on *Jackson* is misplaced.

In *Jackson,* the Court held only that the Sixth Amendment right to assistance of counsel guarantees that right at postarraignment interrogations on those charges because such interrogations represent "critical stages" of adversary judicial proceedings to which the Sixth Amendment applies.[31] *Id.,* pp 629-630. The Court recognized a defendant's invocation of the Sixth Amendment right to counsel is as protected as is the invocation of the right to counsel under *Miranda* at a custodial interrogation:

> [A]fter a formal accusation has been made—and
> a person who had previously been just a "suspect"

sented is whether defendant's request for appointed counsel at arraignment was an invocation of his right to the assistance of counsel during custodial interrogation." *Post,* p 698. We disagree. The precise question is whether the defendant's request invoked the right to counsel during custodial interrogation *on unrelated charges.*

[31] The Sixth Amendment prohibits law enforcement officials from using incriminating statements "deliberately elicited" from an accused without the presence or waiver of counsel after the initiation of adversarial proceedings. *Massiah v United States,* 377 US 201, 205-206; 84 S Ct 1199; 12 L Ed 2d 246 (1964).

has become an "accused" within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation. [*Michigan v Jackson, supra,* p 632.]

The Court extended the rule of *Edwards v Arizona,* finding that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."[32] *Id.,* p 636.

This Court, from which *Jackson* was appealed, held that the defendant's request for counsel at his arraignment implicated only his Sixth Amendment right to counsel, *Bladel, supra,* p 52, relying on the holding in *Rhode Island v Innis,* 446 US 291, 298; 100 S Ct 1682; 64 L Ed 2d 297 (1980), that the Fifth Amendment right to counsel attaches only when an accused is in custody and is subjected to interrogation. Accordingly, we concluded that the arraignment process did not implicate a defendant's Fifth Amendment rights, because it involves no compulsion of the accused to give evidence having testimonial significance. *Bladel, supra,* p 52.

We recognize that the United States Supreme Court did not pass judgment on the validity of this Court's Fifth Amendment analysis in *Jackson.*[33]

[32] The Court found that it made little sense to afford relief from further interrogation "to a defendant who asks a police officer for an attorney" and not to "a defendant who makes an identical request to a judge." Project, *Seventeenth annual review of criminal procedure,* 76 Geo L J 521, 925 (1988), citing *Jackson, supra,* pp 633-634, n 7.

[33] The *Jackson* majority cautioned that it was expressing no view on this Court's conclusion that the request for appointment of counsel at

Nevertheless, the Court did not hold that the invocation of the Sixth Amendment right to counsel at an arraignment also invokes a defendant's Fifth Amendment rights. *Espinoza, supra,* pp 122-123. The *Espinoza* court's conclusion that "[T]he *Jackson* Court specifically observed that an individual who has been arraigned has both a Sixth Amendment and a Fifth Amendment right to counsel at a 'post-arraignment custodial interrogation,'" *id.,* p 123, citing *Jackson, supra,* was based on this language from *Jackson:*

> The question is not whether respondents had a right to counsel at their postarraignment, custodial interrogations. The existence of that right is clear. It has two sources. The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations. *Edwards,* 451 US at 482; *Miranda v Arizona,* 384 US 436, 470 (1966). The Sixth Amendment guarantee of the assistance of counsel also provides the right to counsel at postarraignment interrogations. The arraignment signals "the initiation of adversary judicial proceedings" and thus the attachment of the Sixth Amendment, *United States v Gouveia,* 467 US 180, 187, 188 [104 S Ct 2292; 81 L Ed 2d 146] (1984); thereafter, government efforts to elicit information from the accused, including interrogation, represent "critical stages" at which the Sixth Amendment applies. [*Id.,* pp 629-630.]

We disagree with the conclusion reached by the *Espinoza* court upon which the Court of Appeals relied that from *Jackson,* which bars police-initiated interrogation after indictment in the absence of counsel, it follows that once an accused's Sixth

arraignment implicated only Sixth Amendment rights and not Fifth Amendment rights because the request was not made during custodial interrogation. *Jackson, supra,* p 630, n 4, citing *Bladel, supra,* p 52.

Amendment right to counsel attaches his Fifth Amendment rights become unwaivable in the context of a separate investigation. In *Jackson,* the Court rejected the state's claim that a defendant's request for counsel at arraignment should be limited to the right to assistance at court proceedings and should not extend to subsequent custodial interrogations on the charges; however, the Court did not hold that the request indicated "a desire for legal assistance at subsequent custodial interrogations" on other unrelated charges, as inferred by the dissent.[34] *Post,* p 704.

This conclusion ignores the fact that the constitutional basis upon which the right to counsel is invoked determines both when the right attaches and what constitutes a valid waiver of the right.[35] Project, *Eighteenth annual review of criminal procedure,* 77 Geo L J 489, 647 (1989). In *Maine v*

[34] *Espinoza* fails to recognize the fact that *Jackson* only refused to limit the scope of the Sixth Amendment right to counsel, recognizing that once a defendant's right to counsel has attached on a charge, he should have the assistance of counsel at all stages, including custodial interrogation, and did not intend to extend the scope of the right to counsel under *Miranda* to arraignment proceedings. Thus, *Espinoza* incorrectly concluded that

> [b]ecause an individual who does not understand his or her rights cannot validly waive them, see *Moran v Burbine* [475 US 412, 422; 106 S Ct 1135; 89 L Ed 2d 410 (1986)], we are required to presume that an individual who requests counsel at his or her arraignment is asserting both a Sixth Amendment and a Fifth Amendment right even if the individual does not "articulate exactly why or for what purposes he is seeking counsel," *Jackson,* [475 US] at [633-634] n 7 (quoting [*People*] v *Jackson,* 421 Mich at 63-64; 365 NW2d at 67). [*Id.,* p 123.]

[35] For example, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are . . . admissible at a trial of those offenses." *Maine v Moulton,* 474 US 159, 180, n 16; 106 S Ct 477; 88 L Ed 2d 481 (1985).

On the other hand, the right to counsel under *Miranda,* once invoked, extends to any subsequent custodial questioning, regardless of whether such questioning pertains to matters wholly unrelated to the crime with regard to which the right was invoked. *Roberson, supra.*

*Moulton,* 474 US 159, 180; 106 S Ct 477; 88 L Ed 2d 481 (1985), the Supreme Court distinguished the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination:

> [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.

Contrary to the dissent's conclusion, the Supreme Court has never rejected *Moulton* as authority in the context of the Fifth Amendment.[36] In *Roberson,* the Court simply rejected the petitioner's argument that the rationale employed in

---

[36] The dissent concludes the holding in *Moulton* inapplicable, and thus not controlling in the present case:

First, *Moulton* was a Sixth Amendment case and did not consider directly the Fifth Amendment issue presented here. See *Roberson, supra,* pp 684-685 (rejecting *Moulton* as authority in the Fifth Amendment context). Second, the Court in *Moulton* was discussing suppression of statements "simply because *other charges were pending at the time,*" *id.,* p 180. It did not address suppression due to a prior, and, at the time of the interrogation, still unfulfilled, *request* for counsel made at arraignment. Finally, the Court's analysis in the later cases of *Jackson* and *Roberson* has replaced the *Moulton* dicta on the issue before us. [*Post,* pp 706-707.]

The dissent's discussion of *Moulton* is not supported by case law, and, in addition, there is nothing in the record which indicates that the defendant's request for counsel made at his arraignment was not honored.

*Moulton*[37] could be used to exclude " 'statements about different offenses, developed at different times, by different investigators, in the course of two wholly independent investigations,' " finding the defendant's statement in *Roberson* that " 'he wanted a lawyer before answering *any* questions' " invoked his right to counsel under *Miranda* and prohibited subsequent police-initiated interrogations while he remained in custody.[38] *Roberson, supra,* p 685.

At issue in the case before this Court is whether the defendant's waiver of his rights under *Miranda* was valid and whether his statements are

[37] Further, the Court's analysis in the later cases of *Jackson* and *Roberson* has not replaced the *Moulton* dicta on the issue before us today. *Post,* p 707. The Court reaffirmed that dicta in *Moran v Burbine,* 475 US 412, 431; 106 S Ct 1135; 89 L Ed 2d 410 (1986):

> [L]ooking to the initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel. [In *Moulton*] we considered the constitutional implications of a surreptitious investigation that yielded evidence pertaining to two crimes. For one, the defendant had been indicted; for the other, he had not. Concerning the former, the Court reaffirmed that after the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel. . . . The Court made clear, however, that the evidence concerning the crime for which the defendant had not been indicted—evidence obtained in precisely the same manner from the identical suspect—would be admissible at a trial limited to those charges.

[38] Similarly the dissent ignores the difference between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination:

> The former arises from the fact that the suspect has been formally charged with a particular crime and thus is facing a State apparatus that has been geared up to prosecute him. The latter is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges. [*Roberson, supra.*]

admissible at trial. We find no authority for the adoption of a rule that a defendant's request for court-appointed counsel at an arraignment invalidates a waiver of a defendant's right to counsel per se under *Miranda* during a subsequent police-initiated interrogation concerning a different and unrelated offense.[39] *United States v Roberts,* 869 F2d 70, 74 (CA 2, 1989).

Accordingly, we find the defendant's subsequent waiver of his *Miranda* rights during the police-initiated interrogation concerning the bank robbery offense was not rendered invalid under the rule of *Edwards v Arizona,* and, in light of the inapplicability of *Edwards* and *Paintman, supra,* the defendant's statements implicating himself in the robbery are admissible at trial.

IV

The dissent finds that *Crusoe* requires us to reëvaluate the analysis in *Bladel,* noting that *"Bladel's* Fifth Amendment analysis is inconsistent with other portions of that opinion expressly endorsed by the Supreme Court in *Jackson,* and with other reasoning in the *Jackson* and *Roberson* decisions," concluding that the holding of *Arizona v Roberson,*[40] that police-initiated interrogation of a

[39] As noted by the dissent and the lower courts, the defendant's Sixth Amendment rights had not yet attached with respect to the robbery that had not been charged at the time of the questioning. Thus, the Fifth Amendment, rather than the Sixth Amendment, was at issue. *Post,* p 698, n 1.

[40] In *Roberson,* the defendant was arrested at the scene of a just-completed burglary. The arresting officer advised the defendant of his rights, and the defendant indicated at that time that he wished to deal with the police only through counsel. Three days later while the defendant was still in custody, a different police officer questioned the defendant about a different burglary which had occurred the day before the defendant had been arrested. After advising the defendant of his rights, the officer obtained an incriminating statement. *Id.,* p 678.

suspect is prohibited without providing counsel where the suspect has previously cut off interrogation, is applicable to this situation where "the suspect's request for counsel occurs not during a preceding custodial interrogation, but during a preceding arraignment on another charge." *Post*, p 701.

The dissent's rationale for extending the holdings of *Edwards* and *Roberson* is that

> when defendant requested counsel at his arraignment, he felt that he was not "sufficiently capable of dealing with his adversaries singlehandedly" [and] [h]is request expressed a desire for a lawyer's help, not just with formal legal proceedings, but with all subsequent adversarial confrontations, including custodial interrogation. His request was as effective an invocation of his Fifth Amendment right to counsel as a request to a police officer during interrogation would have been. [*Post*, p 706.]

However, this conclusion does not take into consideration that the two prerequisites that trigger *Miranda* procedural safeguards are *custody and interrogation*,[41] and, assuming that the suspect is in a sufficiently coercive atmosphere to even warrant *Miranda* protections,[42] that there must be

---

[41] Outside the context of custodial interrogations there is no right to counsel under *Miranda*, because "*Miranda* warnings are only required when police engage in interrogation or its functional equivalent," which takes place in a custodial setting. Berger, *Compromise and continuity:* Miranda *waivers, confession admissibility, and the retention of interrogation protections*, 49 U Pitt L R 1007, 1009, n 9 (1988).

[42] The United States Supreme Court held that *Miranda* warnings are not required even when the defendant is in jail awaiting trial on other charges and is questioned by an undercover person. *Moulton, supra*, p 180.

However, in *People v Perkins*, 176 Ill App 3d 443; 531 NE2d 141 (1988), the court held that *Miranda* protections applied to informal interrogation of the defendant by an undercover officer while the defendant was in jail awaiting trial for an unrelated charge. This

an indication by the suspect that he wishes to consult an attorney before speaking[43] in order to bar any further police-initiated questioning.[44] The request for counsel reflects the subjective belief of the defendant that he is uncomfortable with the pressures of custodial interrogation, and is "precisely the state of mind that *Edwards* presumes to persist unless the suspect himself initiates further conversation about the investigation . . . ." *Roberson, supra,* p 684.

In *Roberson,* the Supreme Court found that it is reasonable to assume that when an accused undergoing custodial interrogation about one charge asserts he wants counsel before making a statement, he wants counsel before making statements concerning any charges while he remains in continuous custody.[45] However, a request for counsel at an arraignment does not reflect a similar sub-

holding is contrary to *Moulton* where the Court found, in a similar situation, that the questioning did not amount to "custodial interrogation," and thus the Fifth Amendment was not applicable. The United States Supreme Court granted certiorari to address the issue whether questioning by an undisclosed undercover agent constituted custodial interrogation per se as contemplated by *Miranda* because the suspect was incarcerated.

[43] While the courts recognize that the *Miranda* right to counsel can be asserted in numerous ways, the right must be conveyed to someone, usually an agent of the state who would otherwise seek to question the suspect in an adversarial or investigative process, and, typically, a defendant asserts that right to the interrogating police officer. *Edwards, supra,* p 479.

[44] *Edwards, supra,* pp 484-485. The police may question the defendant only if he initiates the conversation after invoking *Miranda* rights. However, that initiation of conversation by an accused does not constitute a waiver per se of the right to counsel, and the prosecution still must prove that the defendant waived the right to counsel. *Id.*

[45] The United States Supreme Court did not establish a new "rule" of law in *Roberson,* contrary to the conclusion reached by the United States Court of Appeals for the Fourth Circuit in *Butler v Aiken,* 864 F2d 24 (CA 4, 1988).

The Fourth Circuit, relying on the holding in *Colorado v Spring,* 479 US 564; 107 S Ct 851; 93 L Ed 2d 954 (1987) that a waiver of the Fifth Amendment right at the beginning of an interrogation remains valid even if police questioning moves without warning from the

jective belief on the part of the defendant, which is the significant factor in both *Edwards* and *Roberson*.

Therefore, absent the *Edwards* concern "with police conduct that might badger an accused into abandoning a previously invoked right," or evidence that the defendant's arrest on the unrelated charges was a sham intended to make him available for questioning on the bank robbery charge, we do not agree that *Roberson* supports the argument that this Court should presume that a request for counsel invoked at an arraignment reflects the desire for legal assistance during custodial interrogation on different and unrelated charges.

The dissent's interpretation would hold that once an accused has asserted his Sixth Amendment right to counsel, *Edwards* acts as a bar to any valid waiver of the right to counsel under *Miranda* in an investigation of a wholly new incident, thus making it "impossible for a suspect to

crime for which the defendant was arrested to an entirely different offense, initially determined there was "no compelling reason to assume that the invocation of a right to counsel on one offense automatically applies to later charges brought to the attention of the accused." *Butler v Aiken,* 846 F2d 255, 259 (CA 4, 1988). However, that court did not address the circumstances in which the defendant invoked the right to counsel.

On rehearing, the court found that the appearance of counsel with the defendant (who had an IQ of sixty-nine and functioned at the mental level of an eight- or nine-year-old) at a bond hearing on an assault charge for which he was first arrested conclusively demonstrated an invocation of the his Fifth Amendment right. Thus, the subsequent interrogation concerning the murder conducted at 12:15 A.M. shortly after the hearing while the defendant remained in continuous custody was contrary to *Edwards* as modified in *Roberson.* 864 F2d 25. The court concluded, however, that the rule in *Roberson* did not apply retroactively and affirmed the prior decision.

The United States Supreme Court recently granted the plaintiff's petition for certiorari to address the issue whether the Court of Appeals majority misread *Arizona v Roberson* as creating a "new" rule of constitutional law. *Butler v Aiken,* cert gtd sub nom *Butler v McKellar,* 490 US —; 109 S Ct 1952; 104 L Ed 2d 422 (1989).

waive his right to counsel and for questioning on a
new offense to proceed if the accused had asserted
his right to counsel at any earlier point in his
dealings with the authorities." *Roberts, supra,* p
74. While this result has the superficial appeal of a
bright-line rule, it fails to take into account dis-
tinctions the Court itself has but recently articu-
lated, as well as the Court's long-established view
that society has a legitimate interest in obtaining
a defendant's statement and in investigating crimi-
nal activities. *Moulton, supra,* p 180.

The United States Supreme Court has not yet
interpreted the Sixth Amendment of the federal
constitution as requiring that after an arraign-
ment police-initiated interrogation on unrelated
charges is prohibited, or that a voluntary state-
ment obtained during a custodial interrogation on
unrelated charges after appropriate *Miranda*
warnings must be suppressed.[46] While the Court's
Fifth and Sixth Amendment jurisprudence makes
prediction perilous, lacking further guidance from
the Court, we would reject the dissent's conclusion
that the *Edwards* rule has been so broadened that
it places a blanket exclusion on all postindictment
interrogation about unrelated, as yet uncharged
offenses.[47]

---

[46] In this case the defendant does not argue, nor is it anywhere
suggested, that at the arraignment the defendant was interrogated or
that an atmosphere of coercion existed. Further, it is a distinct issue,
not before us in this case, whether a failure to give *Miranda* warnings
at arraignment will invalidate a subsequent voluntary waiver during
custodial interrogation.

[47] Recently, the United States Court of Appeals for the Sixth Circuit
distinguished its earlier holding in *Boles v Foltz,* 816 F2d 1132 (CA 6,
1987), that a defendant's statement at his arraignment that he had an
attorney did not express a desire to only deal with police through
counsel on unrelated charges. *United States v Wolf,* 879 F2d 1320 (CA
6, 1989). However, while the court held that absent evidence the
defendant intends to limit a request for appointment of counsel at an
arraignment, the request will trigger the prophylactic rule of *Rober-
son,* its decision relied on the facts particular to defendant Wolf's
arraignment:

Under the facts of the case before this Court, we agree with the conclusion reached by the trial court that this defendant's request for appointed counsel was made as a routine arraignment matter.[48] Properly initiated interrogation on entirely new charges does not intrude into an accused's previously invoked right at an arraignment on unrelated charges, and we see no constitutional objective that would be served by such an extension of *Edwards* or the suppression of the defendant's statement in this case.[49] The trial court correctly found that there was a voluntary waiver of the defendant's rights, and that the defendant's assertion of the right to counsel on unrelated matters did not vitiate his waiver of his Fifth Amendment right to remain silent.[50]

*Boles* is distinguishable from this case. In concluding that the ordinary meaning of Boles' statement was that he wanted to have his attorney present at an upcoming preliminary hearing, our court relied on evidence in the record that his statement was made as part of an exchange setting up that hearing. [*Wolf, supra*, p 1323.]

Similarly, it is clear, relying on the evidence in the record, that in the case now before this Court, the defendant's request for counsel at his arraignment indicated that the statement reflected only the desire for legal assistance on the assault and breaking and entering charges.

[48] The record does not support the dissent's conclusion that when the defendant requested counsel at his arraignment he was requesting the assistance of counsel at subsequent interrogations on unrelated charges.

[49] This reasoning is also supported by the holding in *Connecticut v Barrett*, 479 US 523, 528; 107 S Ct 828; 93 L Ed 2d 920 (1987), where the Court defined the prophylactic purpose of *Miranda*, with regard to the prohibition on further interrogation once counsel has been requested as

designed to insulate the exercise of Fifth Amendment rights from the government "compulsion, subtle or otherwise," that "operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."

The Court concluded that there was no constitutional objective to be served by suppression of the defendant's statement. *Id.*

[50] The dissent refuses to recognize that the defendant made clear to

Accordingly, the defendant's subsequent waiver of his *Miranda* rights with regard to the unrelated crime should not be deemed invalid merely because it came in response to police-initiated questioning.

### CONCLUSION

In sum, we find that the defendant's request for counsel at his arraignment invoked his Sixth Amendment right to counsel which is limited to the specific crimes for which the state has initiated adversarial proceedings. Further, the defendant's request did not invoke his right to counsel under *Miranda* prior to the police-initiated interrogation concerning the bank robbery. Thus, the defendant's waiver of his rights at the interrogation was valid and his statement was admissible at trial.

Therefore, we reverse the decision of the Court of Appeals and reinstate the decision of the trial court that the defendant's confession was admissible at trial.

RILEY, C.J., and BRICKLEY and GRIFFIN, JJ., concurred with BOYLE, J.

CAVANAGH, J. (*dissenting*). Defendant invoked both his Sixth Amendment and Fifth Amendment rights to the assistance of counsel when he requested appointment of counsel at his arraignment on unrelated charges prior to being questioned by the authorities. Therefore, under *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), and *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), cert den 456 US 995 (1982), which prohibit police-initiated interrogation after

the FBI agents his willingness to talk about the crime for which he was a suspect.

a suspect has invoked his right under the Fifth Amendment to the assistance of counsel, defendant's statements are inadmissible.

I

We agree with the majority to limit the analysis in this case to the Fifth Amendment theory addressed by the Court of Appeals.[1]

The precise question presented is whether defendant's request for appointed counsel at arraignment was an invocation of his right to the assistance of counsel during custodial interrogation. If it was, then the rule in *Edwards* and *Paintman, supra,* may bar the use of his confession at trial.

---

[1] Defendant does not continue to argue in this Court that he invoked his right to silence during the first interrogation, or that his statements were the product of police trickery. Therefore, we do not reach whether or not the trial court's rulings concerning these separate Fifth Amendment claims were erroneous.

It is also unnecessary to review the trial court's decision that no Sixth Amendment violation occurred. We agree with the trial court that no Sixth Amendment right to counsel had yet attached on the robbery charge at the time of either interrogation. See *People v Bladel (After Remand),* 421 Mich 39, 51-52, (Sixth Amendment right to counsel attaches "only at or after the initiation of adversary judicial proceedings against the accused"). However, we observe that New York has adopted the rule that once a defendant requests the assistance of counsel on one charge, defendant's Sixth Amendment right to counsel on that charge can only be adequately protected by suppressing all uncounseled statements taken at subsequent police-initiated custodial interrogation on *any* crime. See *People v Rogers,* 48 NY2d 167; 422 NYS2d 18; 397 NE2d 709 (1979); *People v Bartolomeo,* 53 NY2d 225; 440 NYS2d 894; 423 NE2d 371 (1981); *People v Robles,* 72 NY2d 689; 536 NYS2d 401; 533 NE2d 240 (1988); note, *Prior representation and the duty to inquire: Breaching New York's "Once-an-Attorney" rule,* 10 Cardozo L R 259 (1988). Defendant argued in the trial court that Michigan should follow this New York rule. There can be little doubt that in the real world of multiple charging, habitualization of offenses, and plea bargaining, "unrelated" offenses significantly affect the ultimate disposition of the custodial charge. However, because the grant order is limited, this Sixth Amendment theory was not briefed or argued in this Court, and we express no opinion about the New York rule.

This question has recently divided both the federal courts of appeals[2] and state courts.[3]

A

*Edwards, supra,* pp 484-485, held that a suspect who has

expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Under this rule, a suspect's waiver of *Miranda* rights at police-initiated custodial interrogation following his request for counsel at an earlier interrogation is not sufficient to demonstrate that this waiver of the Fifth Amendment right to re-

[2] Compare *United States v Roberts,* 869 F2d 70, 74 (CA 2, 1989), with *United States ex rel Espinoza v Fairman,* 813 F2d 117 (CA 7, 1987), cert den 483 US 1010 (1987), and *United States v Wolf,* 879 F2d 1320 (CA 6, 1989) (Fifth Amendment right invoked at arraignment on separate charge). See also *Butler v Aiken,* 864 F2d 245 (CA 4, 1988) (assuming Fifth Amendment right invoked at arraignment on separate charge), cert gtd sub nom *Butler v McKellar,* 490 US —; 109 S Ct 1952; 104 L Ed 2d 422 (1989).

[3] The following courts have held or suggested that an arraignment request for counsel does not invoke a defendant's Fifth Amendment entitlement to counsel: *State v Stewart,* 113 Wash 2d 462; 780 P2d 844 (1989); *State v Hitch,* 772 P2d 1150, 1154 (Ariz App, 1989); *Miller v State,* 403 So 2d 1017, 1019 (Fla App, 1981) (dicta); *People v Hicks,* 179 Ill App 3d 468; 128 Ill Dec 448; 534 NE2d 630 (1989) (dicta); *State v Sparklin,* 61 Or App 608; 658 P2d 571 (1983).

The following courts have disagreed: *State v Preston,* 150 Vt 511; 555 A2d 360 (1988); *Sutherland v State,* 299 Ark 86; 771 SW2d 264 (1989).

See also *Alston v State,* 554 A2d 304, 310 (Del, 1989), cert den 490 US —; 109 S Ct 2455; 104 L Ed 2d 1009 (1989) (a defendant may invoke the right at an arraignment, but did not invoke right by filling out request for counsel form available to warden but not police); *Higginbotham v State,* 769 SW2d 265 (Tex App, 1989) (precharge request for counsel to a magistrate invokes Fifth Amendment right to counsel).

main silent was voluntary. The Supreme Court, in its most recent decision in this area, *Arizona v Roberson*, 486 US 675, 680-682; 108 S Ct 2093; 100 L Ed 2d 704 (1988), explained the purpose of the *Edwards* rule:

> [T]he prophylactic protections that the *Miranda* warnings provide to counteract the "inherently compelling pressures" of custodial interrogation and to "permit a full opportunity to exercise the privilege against self-incrimination," 384 US at 467, 86 S Ct at 1624, are implemented by the application of the *Edwards* corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the "inherently compelling pressures" and not the purely voluntary choice of the suspect. As Justice White has explained, "the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Michigan v Mosley*, 423 US 96, 110, n 2; 96 S Ct 321; 46 L Ed 2d 313 (1975) (concurring in result).

In *Roberson,* the Court held that the *Edwards* rule applied even when the crime investigated in the subsequent police-initiated interrogation was unrelated to the crime investigated at the interrogation in which the suspect requested counsel. The Court rejected the view "that fresh sets of *Miranda* warnings will 'reassure' a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled." *Roberson, supra,* p 686.

*Roberson* and *Edwards* clearly hold that in order to insure that a suspect's waiver of his Fifth

Amendment right to remain silent is voluntary and not coerced, courts may suppress any statement obtained during uncounseled, police-initiated questioning if the suspect requested counsel at a preceding interrogation. The Court, however, has not yet ruled whether or not the same protection is required when the suspect's request for counsel occurs not during a preceding custodial interrogation, but during a preceding arraignment on another charge.

B

The Supreme Court declined to comment on this question in *Michigan v Jackson, supra,* which affirmed our decision in *People v Bladel, supra.* In *Bladel,* each defendant had requested counsel at his arraignment, but was later interrogated about the crime charged. During interrogation, each defendant waived his *Miranda* rights and then incriminated himself. Both defendants argued that their postarraignment statements were obtained in violation of their Fifth and Sixth Amendment rights to counsel because each had previously asked the arraigning magistrate for appointed counsel. *Id.,* p 50.

We held in *Bladel* that the defendants' Fifth Amendment right to counsel was not "implicated." We reasoned:

> Although defendants were in custody at the time of their arraignments, they were not subjected to interrogation. In addition, they did not specifically request counsel for any subsequent custodial interrogations which might be conducted. Defendants requested appointed counsel because they were financially incapable of retaining an attorney and were unwilling to represent themselves. See *State v Sparklin,* 296 Or 85, [90-91]; 672 P2d 1182, 1185-1186 (1983).

The trial courts found that defendants never invoked their Fifth Amendment right to counsel before or during their post-arraignment interrogations. Furthermore, defendants knowingly and voluntarily waived their *Miranda* rights prior to their statements. Our independent review of the record does not disclose that these findings are clearly erroneous. [*Bladel, supra,* pp 52-53.]

Regarding the defendants' Sixth Amendment claims, however, we held in *Bladel* that each defendant's *Miranda* waiver was inadequate to ensure a valid waiver of the Sixth Amendment right to counsel. Reviewing our decision, the United States Supreme Court agreed with our Sixth Amendment analysis. *Jackson, supra,* pp 629-636. The Court, however, expressly declined to "comment on the validity of " our Fifth Amendment analysis that found that " 'defendants' request to the arraigning magistrate for appointment of counsel implicated only their Sixth Amendment right to counsel, . . . because the request was not made during custodial interrogation." *Jackson, supra,* p 630, n 4.

This case requires us to reëvaluate the analysis in *Bladel* on which the United States Supreme Court refused comment. We do not feel bound today by the two-paragraph Fifth Amendment analysis in *Bladel*. The Fifth Amendment analysis was not determinative of the disposition of either case considered in *Bladel*. We resolved defendants' right to counsel challenges under the Sixth Amendment because the statements each defendant sought to suppress concerned the same charge on which each defendant was arraigned. More importantly, *Bladel's* Fifth Amendment analysis is inconsistent with other portions of that opinion expressly endorsed by the Supreme Court

in *Jackson,* and with other reasoning in the *Jackson* and *Roberson* decisions.

C

1

A suspect's request for an attorney during custodial interrogation demonstrates that the suspect wants a lawyer to help him deal with police questions. The request triggers the waiver protections of *Edwards.* A suspect's expression of the same desire in contexts other than custodial interrogation, at arraignment for instance, deserves the same respect.

Plaintiff argues that a defendant requesting counsel at arraignment does not express a need for help with questioning, but instead seeks legal assistance only "to help him with the adversary proceedings on the charged offense." Plaintiff asks this Court to conclude first, that at the time defendant requested counsel at arraignment, he wanted counsel only to help him with the charges on which he was arraigned and second, that defendant wanted assistance only with "adversary proceedings" and not with custodial interrogation.

Although reading the mind of any defendant is admittedly a difficult task, the Supreme Court's recent decisions offer some guidance. In *Roberson, supra,* p 684, the Court wrote:

Roberson's unwillingness to answer any questions without the advice of counsel, without limiting his request for counsel, indicated that he did not feel sufficiently comfortable with the pressures of custodial interrogation to answer questions without an attorney. This discomfort is precisely the state of mind that *Edwards* presumes to persist unless the suspect himself initiates further

conversation about the investigation; unless he
otherwise states, see *Connecticut v Barrett* [479
US 523; 107 S Ct 828; 93 L Ed 2d 920 (1987)], there
is no reason to assume that a suspect's state of
mind is in any way investigation-specific, see *Colo-
rado v Spring* [479 US 564; 107 S Ct 851; 93 L Ed
2d 954 (1987)].

*Roberson* undermines plaintiff's argument that
we must find that when defendant requested coun-
sel at his arraignment on the assault and breaking
and entering charges he desired legal assistance
on those charges alone. Indeed, when defendant
requested counsel at his arraignment on the as-
sault and breaking and entering charges, he had
already been questioned about the robbery. As in
*Roberson,* "there is no reason" in this case "to
assume that [defendant's] state of mind [was] in
any way investigation-specific." *Id.,* p 684.[4]

The Court's decision in *Jackson* undermines
plaintiff's other contention—that defendant's ar-
raignment request did not evince a desire for legal
assistance at subsequent custodial interrogations.
In *Jackson, supra,* pp 632-633, the Court specifi-
cally rejected the almost identical claim that a
defendant who requests counsel at arraignment
does not intend his request to encompass represen-
tation during later interrogation, stating:

> The State also relies on the factual differences
> between a request for counsel during custodial
> interrogation and a request for counsel at an
> arraignment. The State maintains that respon-
> dents may not have actually intended their re-

---

[4] The majority's reliance on *Connecticut v Barrett, supra,* is mis-
placed. Our interpretation of defendant's request for appointed coun-
sel does not "disregard . . . the ordinary meaning" of his request. *Id.,*
p 530. An examination of the record here does not support the
majority's conclusion that defendant's request for counsel was limited
to particular charges. *Ante,* p 696. See *Wolf,* n 2 *supra.*

quest for counsel to encompass representation during any further questioning by the police. This argument, however, must be considered against the backdrop of our standard for assessing waivers of constitutional rights. Almost a half century ago, in *Johnson v Zerbst,* 304 US 458 [58 S Ct 1019; 82 L Ed 1461] (1938), a case involving an alleged waiver of a defendant's Sixth Amendment right to counsel, the Court explained that we should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* at 464. For that reason, it is the State that has the burden of establishing a valid waiver. *Brewer v Williams,* 430 US [387, 404; 97 S Ct 1232; 51 L Ed 2d 424 (1977)]. Doubts must be resolved in favor of protecting the constitutional claim. This settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel—we presume that the defendant requests the lawyer's services at every critical stage of the prosecution. We thus reject the State's suggestion that respondents' requests for the appointment of counsel should be construed to apply only to representation in formal legal proceedings.

The Court expressly agreed with our "comments" in *Bladel* concerning "the nature of an accused's request for counsel":

"Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; *he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation to a defendant who makes an identical request to a judge.*

*The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly."* [*Jackson, supra,* pp 633-634, n 7 (quoting *Bladel, supra,* pp 63-64). Emphasis added.]

In light of *Jackson* and *Roberson,* we conclude that when defendant requested counsel at his arraignment, he felt that he was not "sufficiently capable of dealing with his adversaries singlehandedly." His request expressed a desire for a lawyer's help, not just with formal legal proceedings, but with all subsequent adversarial confrontations, including custodial interrogation. His request was as effective an invocation of his Fifth Amendment right to counsel as a request to a police officer during interrogation would have been.[5]

2

Plaintiff argues its position is supported by language in *Maine v Moulton,* 474 US 159, 179-180; 106 S Ct 477; 88 L Ed 2d 481 (1985). *Moulton* does not control the decision in this case. First, *Moulton* was a Sixth Amendment case and did not consider directly the Fifth Amendment issue presented here. See *Roberson, supra,* pp 684-685 (rejecting *Moulton* as authority in the Fifth Amendment context). Second, the Court in *Moulton* was discussing suppression of statements "simply because *other charges were pending at the time,"* id., p 180. It did not address suppression due to a prior, and, at the time of the interrogation, still unful-

---

[5] See also *Johnson v Virginia,* 454 US 920, 922-923; 102 S Ct 422; 70 L Ed 2d 231 (1981) (Marshall, J., dissenting from denial of certiorari); Tomkovicz, *Standards for invocation and waiver of counsel in confession contents,* 71 Iowa L R 975, 1012-1015 (1986).

filled,[6] *request* for counsel made at arraignment.[7]
Finally, the Court's analysis in the later cases of
*Jackson* and *Roberson* has replaced the *Moulton*
dicta on the issue before us.

3

Plaintiff also argues that application of the *Ed-
wards* rule to this situation "severely hampers
ongoing investigations by police officers as to unre-
lated charges." "[T]he police will simply be unable
to approach one who is in custody on a charged
offense and who has requested or has counsel at
arraignment." Policy arguments predicting crip-
pling effects on effective law enforcement have
invariably been advanced in cases following *Mi-
randa,* and have generally been rejected. Most
recently, in *Roberson, supra,* pp 688-689, the Court
was unswayed by the dissenters' contention that
the Court's ruling

> will in many instances deprive our nationwide law
> enforcement network of a legitimate investigative
> technique now routinely used to resolve major
> crimes.
>
> * * *
>
> It is a frequent occurrence that the suspect is
> wanted for questioning with respect to crimes
> unrelated to the one for which he has been appre-

---

[6] One agent later testified that she began the interview by asking
the defendant if he had an attorney and that he told her "he thought
they were going to be appointing counsel for him." She then asked if
defendant had met with an attorney yet and he answered that he had
not. The agent read defendant his *Miranda* rights. Defendant then
signed a standard waiver form and made incriminating statements
linking himself to the robbery.

[7] This case does not present the question whether *acceptance* of
appointed counsel is the equivalent of *requesting* appointed counsel in
this context. See, .e.g., *Espinoza, supra,* p 123, n 4 (acceptance of
counsel is sufficient); *Dew v United States,* 558 A2d 1112, 1116 (DC
App, 1989) (appointment of counsel is equivalent to a request for
counsel under *Jackson*).

hended. The rule announced today will bar law
enforcement officials, even those from some other
city or other jurisdiction, from questioning a sus-
pect about an unrelated matter if he is in custody
and has requested counsel to assist in answering
questions put to him about the crime for which he
was arrested. [Kennedy, J., dissenting.]

Like the Court in *Roberson, supra,* pp 681-682,
we find that a bright-line rule would have

"the virtue of informing police and prosecutors
with specificity as to what they may do in conduct-
ing custodial interrogation, and of informing
courts under what circumstances statements ob-
tained during such interrogation are not admissi-
ble. This gain in specificity, which benefits the
accused and the State alike, has been thought to
outweigh the burdens that the decision in *Miranda*
imposes on law enforcement agencies and the
courts by requiring the suppression of trustworthy
and highly probative evidence even though the
confession might be voluntary under traditional
Fifth Amendment analysis." [Quoting *Fare v Mi-
chael C,* 442 US 718.]

Contrary to plaintiff's contentions, suspects re-
main free to give statements to the police after
requesting counsel at an arraignment. "[A]ny 'fur-
ther communications, exchanges, or conversations
with the police' that the suspect himself initiates,
. . . are perfectly valid." *Roberson, supra,* p 687.[8]

II

We agree with the Court of Appeals that defen-

---

[8] See, e.g., *Kight v State,* 512 So 2d 922, 926 (Fla, 1987) ("Even if we
were to adopt the seventh circuit's holding in *Espinoza,* there was no
*Edwards* violation in this case because it was Kight who initiated the
conversations . . . ."), cert den 485 US 929; 108 S Ct 1100; 99 L Ed 2d
262 (1988).

dant's statements should have been suppressed[9] and would affirm the judgment of the Court of Appeals.

LEVIN and ARCHER, JJ., concurred with CAVANAGH, J.

---

[9] Plaintiff does not argue that the admission of defendant's statements was harmless error.